168 P.3d 49

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Joseph Everett PERRY, Defendant–Appellant.**

No. 33062.

Court of Appeals of Idaho.

Aug. 3, 2007.

Review Denied Sept. 28, 2007.

Molly J. Huskey, State Appellate Public Defender; Diane M. Walker, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

LANSING, Judge.

Joseph Everett Perry appeals from his convictions for battery and sexual abuse of a child under the age of sixteen. He contends that the district court erred in denying his request to present evidence that one of the victims had made false sexual allegations in the past. He also contends that the prosecutor committed misconduct by eliciting testimony vouching for the victims' credibility and referring to that testimony in closing arguments. We hold that Perry's proffered evidence was properly excluded. We also hold that prosecutorial misconduct did occur but that it constitutes harmless error. Therefore we affirm the judgment.

## I.

### FACTUAL & PROCEDURAL BACKGROUND

While Perry's two daughters T.P. (age 11) and H.P. (age 13) were living in foster care, Perry occasionally took the children to his home for overnight visits. After one visit, the girls revealed to their foster mother that Perry would sometimes invite one girl to sleep with him, and while the girl was lying in bed facing away from Perry, he would move against her and rub his penis against the girl's back or buttocks. Based on these accusations, Perry was charged with four counts of lewd and lascivious conduct with a minor under sixteen, Idaho Code § 18–1508.

At trial, without objection from defense counsel, the prosecutor asked the victims' foster mother whether the victims had ever been dishonest with her. She answered that they had lied to her about "normal kid stuff" such as messes in the house. In cross-examination, defense counsel asked if the children had ever been dishonest about any significant matter, and she answered that they had not. Defense counsel then requested leave, pursuant to Idaho Rule of Evidence 412(b)(2)(C),[1] to conduct cross-examination that would produce evidence that T.P. had made a false allegation of "sexual abuse" in the past.[2]

---

1. Rule 412 provides that generally in a trial on a sex crime charge, evidence of a victim's past sexual behavior is not admissible, subject to certain exceptions, including an exception for evidence of "false allegations of sex crimes made at an earlier time." I.R.E. 412(b)(2)(C).

2. Perry had also filed a motion in limine for leave to present this evidence, which the district

Specifically, he wanted to elicit the foster mother's testimony that T.P. had told her that H.P. had once grabbled T.P.'s breasts and had turned the shower head to spray T.P.'s privates when the two were showering together. T.P. later admitted that she had lied about some details of this statement. Perry wanted to use this evidence to impeach T.P.'s accusations against Perry and impeach the foster mother's testimony that neither of the girls had ever told her a significant lie. The district court ruled that this evidence was not admissible. In ruling on this issue, the district court observed that some of the testimony the prosecutor had elicited from the foster mother about the girls' truthfulness was probably inadmissible but that defense counsel had made a tactical decision not to object in order to lay groundwork for his proffer of evidence that T.P. had made a false accusation of sexual misconduct by H.P.

Later, the prosecutor elicited testimony from the foster father, again without objection from the defense, that the girls had lied only about inconsequential, childish things and that he believed they were being truthful when they reported Perry's alleged sexual misconduct.

The prosecutor also presented the testimony of an investigating officer, asking questions apparently designed to establish the officer's expertise in determining a child's truthfulness; and the prosecutor asked the officer's opinion whether T.P. was truthful in reporting the alleged acts. The officer said that he saw no indication that T.P. was being untruthful. When the prosecutor asked the same question regarding H.P., defense counsel objected, and the district court sustained the objection stating: "This just seems to be a way of trying to vouch for the witnesses' credibility and I think it's inadmissible. I'll sustain the objection. It's up to the jury to decide whether the witnesses are credible or not."

Nevertheless, during closing argument the prosecutor said that all three witnesses—

both foster parents and the officer—believed the girls' allegations. The jury found Perry not guilty of the charged offenses, but guilty of lesser offenses, two counts of sexual battery of a minor child, I.C. § 18–1508A, and two counts of battery I.C. § 18–903.

Perry appeals, contending that he should have been permitted to introduce the evidence that T.P. had made a false report of sexual abuse by H.P. He also contends that the prosecutor engaged in misconduct when she elicited and commented upon testimony that vouched for the victims' credibility.

## II.

## ANALYSIS

### A. Evidence that T.P. Made a False Allegation of a Sex Crime at an Earlier Time

■ Perry first contends that the district court erred in excluding his proffered evidence that T.P. had previously made a false allegation of a sex crime, i.e., that T.P. had reported, and later partially retracted, a story that while she was taking a shower with H.P., H.P. had twice touched her breast and sprayed her genitals using a shower nozzle. Perry wanted to use this evidence to directly impeach T.P.'s testimony that he molested her, and to impeach the foster mother's statement that T.P. had never lied about anything of significance.

■ To be admissible, evidence must, at a minimum, meet the threshold standards of Rules 401, 402, and 403 that the evidence be relevant and that its probative value not be outweighed by other considerations outlined in Rule 403, including the danger of unfair prejudice, confusion of the issues, and waste of time.[3] Whether evidence is relevant is an issue of law over which we exercise *de novo* review. *State v. Raudebaugh,* 124 Idaho 758, 764, 864 P.2d 596, 602 (1993). If the evidence is relevant, the trial court's determination as to whether its probative value is

court did not address before trial.

**3.** Idaho Rule of Evidence 403 provides:
   Although relevant, evidence may be excluded if its probative value is substantially out-

weighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

substantially outweighed by the danger of unfair prejudice, confusion of the issues, or other concerns is reviewed for an abuse of discretion. *State v. Harshbarger*, 139 Idaho 287, 292, 77 P.3d 976, 981 (Ct.App.2003).

According to defense counsel's representations to the trial court, T.P. had once told her foster mother that H.P. had pointed the shower head at T.P.'s genitals and had twice grabbed T.P.'s "boobies" while the girls were on vacation. T.P. also told the foster mother that H.P. had refused to stop spraying when T.P. asked her to do so. Later during an interview, T.P. continued to maintain that the shower incident had occurred but acknowledged that H.P. stopped when T.P. asked her to. T.P. never recanted the allegation about the spraying incident. Rather, her reports varied only with respect to her sister's willingness to stop spraying when T.P. protested.[4] With this explanation of the proffered testimony, the district court commented, "It's a real stretch to say that that was a false allegation of a, quote, sex crime, unquote." The court then ruled that the evidence's probative value was "slim" and that any probative value was outweighed by "the danger of getting a lot of extraneous issues before the jury that are a waste of their time and not going to be helpful to them in deciding what is the guilt or innocence of the defendant."

We find no error in the district court's assessment. The evidence Perry hoped to elicit was not that T.P. invented the entire incident or exaggerated the major events, but only that she lied when she initially reported to her foster mother that H.P. refused to stop. This was inconsequential information about children's horseplay and disputes. It is of no relevance either to rebut the foster mother's statement that the girls had never lied to her about a matter of significance, or to impeach T.P. Even if the evidence could reasonably be viewed as having some limited relevance for impeachment, the district court was well within the bounds of its discretion in holding that any marginal probative value was substantially outweighed by the danger of confusing or misleading the

jury with extraneous issues and wasting trial time.

## B. Prosecutorial Misconduct

Perry also contends that the prosecutor engaged in misconduct throughout the trial and during closing arguments by eliciting and commenting upon testimony that vouched for the veracity of the victims. In particular, Perry alleges that the prosecutor committed three acts of misconduct: eliciting the testimony from the foster mother that the children had never lied about anything of significance; eliciting the testimony from the foster father and a police officer that in their opinions the victims' report of abuse was truthful; and reiterating this testimony during closing argument.

Our analysis must begin with recognition that Perry's attorney did not object to the prosecutor's examination of the foster mother or the foster father, nor to her questions to the officer that laid the foundation of his asserted expertise in evaluating the truthfulness of children, nor to the prosecutor's question which asked the officer's opinion on T.P.'s truthfulness. An objection was finally made only to the question regarding the officer's opinion of H.P.'s veracity. During closing argument when the prosecutor referred to all of this testimony and incorrectly indicated that the officer had testified about H.P.'s truthfulness, there was again no objection from the defense.

When an objection to a prosecutor's act was made at trial, we determine whether there was error in the trial court's ruling and if so, whether the error was harmless. *State v. Phillips*, 144 Idaho 82, 88, 156 P.3d 583, 589 (Ct.App.2007). If the defendant failed to preserve an issue for appeal by a timely objection, however, the issue will be reviewed on appeal only if it constitutes fundamental error. *State v. Lovelass*, 133 Idaho 160, 167, 983 P.2d 233, 240 (Ct.App.1999); *Phillips*, 144 Idaho at 88, 156 P.3d at 589. The Idaho Supreme Court has defined fundamental error as follows:

---

4. Perry presented no evidence that T.P.'s assertion that H.P. touched her breasts was untruthful.

Error that is fundamental must be such error as goes to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive.

*State v. Christiansen,* 144 Idaho 463, 470, 163 P.3d 1175, 1182 (2007); *State v. Bingham,* 116 Idaho 415, 423, 776 P.2d 424, 432 (1989). In *Christiansen,* the court recognized that it has also utilized other definitions of fundamental error:

At other times, we have defined fundamental error as "[a]n error that goes to the foundation or basis of a defendant's rights," *State v. Kenner,* 121 Idaho 594, 597, 826 P.2d 1306, 1309 (1992), and "error which 'so profoundly distorts the trial that it produces manifest injustice and deprives the accused of his constitutional right to due process,'" *State v. Sheahan,* 139 Idaho 267, 281, 77 P.3d 956, 970 (2003) (quoting *State v. Mauro,* 121 Idaho 178, 180, 824 P.2d 109, 111 (1991)).

*Christiansen,* 144 Idaho at 470, 163 P.3d at 1182.

Although in the present case, as explained below, much of the prosecutor's conduct that is belatedly challenged on appeal may constitute misconduct, we conclude that it is not so egregious as to rise to the level of fundamental error, particularly in view of defense counsel's apparent acquiescence in some of the prosecutor's questioning as a matter of defense strategy. Therefore, we will not consider those misconduct claims further.

■ We are left, therefore, to review only the claim that the prosecutor engaged in misconduct when she asked the officer whether H.P. displayed any signs of untruthfulness. The Idaho Supreme Court recently considered a very similar claim of prosecutorial misconduct in *Christiansen.* There, the Supreme Court held that a prosecutor had committed misconduct by asking a series of questions about an officer's training to detect deceptiveness in interviewees by observing their body language and other factors, all to lay a foundation for the prosecutor's ultimate effort to elicit the officer's conclusion that the defendant had lied while being interrogated. The Supreme Court said:

The questioning by the prosecuting attorney was clearly improper. Sergeant Clark's opinion testimony regarding Christiansen's veracity was clearly inadmissible. Over one-hundred years ago the Supreme Court of the Territory of Idaho held that a question calling "for the opinion of one witness as to the truthfulness of another ... is clearly an invasion of the province of the jury, who are the judges of the credibility of witnesses." *People v. Barnes,* 2 Idaho 148, 150, 9 P. 532, 533 (1886). In *State v. Walters,* 120 Idaho 46, 55, 813 P.2d 857, 866 (1990), we stated, "Generally, expert testimony that purports to determine whether a particular witness is truthful on a particular occasion is not permitted because there is no reason to believe that experts are any more qualified to render such opinions than are jurors." In *State v. Raudebaugh,* 124 Idaho 758, 768, 864 P.2d 596, 606 (1993), we said, "Pursuant to [I.R.E. 608(a)], testimony by one witness that another witness was, or was not, telling the truth when they made a particular statement is not admissible evidence." Most recently, in *State v. Perry,* 139 Idaho 520, 81 P.3d 1230 (2003), we held that, absent a stipulation of both parties, opinion testimony regarding the results of the defendant's polygraph examination was inadmissible in his criminal trial because such testimony "usurps the role of the jury as the ultimate finder of credibility" and "[t]he polygraph results in this case do not help the trier of fact to find facts or to understand the evidence as required by I.R.E. 702." *Id.* at 525, 81 P.3d at 1235.

. . . .

Even though the district court sustained the objection to Sergeant Clark's opinion, the jury obviously understood where the prosecuting attorney was going with this line of questioning. It was obvious that he was seeking to have Sergeant Clark testify that in his opinion Christiansen was lying during the interview. The objection to Sergeant Clark's ultimate opinion did not prevent the jury from inferring what that opinion would be. This type of tactic is prosecutorial misconduct.

*Id.* at 469, 163 P.3d at 1181. *See Reynolds v. State,* 126 Idaho 24, 31, 878 P.2d 198, 205

(Ct.App.1994); *State v. Johnson,* 119 Idaho 852, 857, 810 P.2d 1138, 1143 (Ct.App.1991).

The police officer's testimony in this case was of precisely the type that the Supreme Court condemned in *Christiansen,* and it was elicited after the district court had already indicated that such testimony was inadmissible when the court discussed the prosecutor's similar direct examination of the foster mother. *Compare State v. Martinez,* 136 Idaho 521, 37 P.3d 18 (Ct.App.2001) (prosecutorial misconduct in eliciting a statement from the victim that had been excluded from the preliminary hearing and attempting to elicit the contents of a doctor's report which had previously been ruled inadmissible); *State v. Agundis,* 127 Idaho 587, 903 P.2d 752 (Ct. App.1995) (prosecutorial misconduct in eliciting hearsay evidence after the district court had sustained the defendant's objection to this questioning). We therefore hold that this component of the prosecutor's direct examination of the officer amounts to misconduct.

■ We therefore must determine whether this misconduct requires reversal of Perry's conviction or is mere harmless error. Error will be deemed harmless if the appellate court is convinced beyond a reasonable doubt that the result of the trial would have been the same if the misconduct had not occurred. *Id. See Phillips,* 144 Idaho at 88, 156 P.3d at 589.

We conclude that on the facts presented here, the single reviewable episode of prosecutorial misconduct was harmless. We note that earlier in the trial, the jury was instructed to disregard evidence to which an objection was sustained. It must be acknowledged, however, that the mitigating effect of that instruction was undermined when the

prosecutor again referred to the police officer's opinion during her closing argument and even misrepresented that the officer had been allowed to testify that he believed *both* victims.[5] More significantly, the State's evidence of Perry's guilt, while perhaps not overwhelming, was very solid. The two victims corroborated one another. Each testified that on two occasions when Perry was in bed with her she could feel his penis against her lower back or buttocks. Both victims testified that Perry moved in up-and-down motion. There was also corroborating evidence that Perry was physically affectionate with his daughters. The foster mother testified that he frequently hugged the girls and kissed them on the lips, and that the girls sometimes withdrew from these advances. A social worker also saw Perry kiss the girls on the lips. Finally, we must consider the reality that by the time that counsel objected to the officer's rendering an opinion about H.P.'s credibility, the jury had already heard the officer's testimony that he believed T.P. and the foster father's testimony that he saw no signs of untruthfulness when T.P. and H.P. told him of the alleged molestations. Thus, the prosecutor's questioning of the officer on his opinion of H.P.'s credibility added little to what the jury had already heard.

On the record presented here, we are convinced beyond a reasonable doubt that the jury would have found Perry guilty of the same offenses if the prosecutor had not improperly questioned the police officer about his opinion of H.P.'s truthfulness. Therefore, the misconduct was harmless error.[6]

### III.

### CONCLUSION

The district court did not err in excluding the evidence that T.P. had exaggerated the

---

5. This is a factor in the harmless error analysis regardless of whether the prosecutor's closing argument, to which there was no objection, was itself reviewable as fundamental error.

6. Appellate counsel for Perry asks, as she has previously, *see Phillips,* 144 Idaho at 88–89, 156 P.3d at 589–90, to deter prosecutorial misconduct by ordering a new trial even if conventional application of harmless error standards would not call for a reversal. Although we do not dismiss the possibility of utilizing that sanction if circumstances demand it, *see id.,* we do not yet

resort to that approach. On the other hand, we will not strain to find harmlessness in the face of clear prosecutorial misconduct. Furthermore, even if the misconduct to which objection was made in the trial court does not lead to reversal on direct appeal, in cases like this where defense counsel made no objection to much of the misconduct and thereby precluded appellate review, there remains a possibility that a post-conviction action for ineffective assistance of counsel could yield an order for a new trial as an ultimate result of the prosecutorial misconduct.

shower incident with H.P., for any minimal probative value of this evidence was substantially outweighed by the danger of jury confusion and waste of trial time. The prosecutor engaged in misconduct by seeking to elicit the police officer's opinion that H.P. truthfully reported the sexual abuse. In the context of the case, however, we conclude that the error was harmless.

The judgment of conviction is affirmed.

Chief Judge PERRY and Judge GUTIERREZ concur.