IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 33977

| STATE OF IDAHO, | ) | 2009 Opinion No. 46 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: June 15, 2009 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| SAMUEL AARON BARNES, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael E. Wetherell, District Judge.

Judgment of conviction, affirmed.

Molly J. Huskey, State Appellate Public Defender; Sarah E. Tompkins, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cudé, Deputy Attorney General, Boise, for respondent.

GRATTON, Judge

Samuel Aaron Barnes appeals from the judgment of conviction entered upon a jury verdict finding him guilty of burglary and petit theft. We affirm.

## I.

## FACTS AND PROCEDURAL BACKGROUND

Barnes' girlfriend (S.K.) was a Subway restaurant employee. Barnes regularly visited S.K. during her shifts. S.K. had been given the security codes to both the alarm system and the safe. During one of her shifts a key to the restaurant was discovered missing. At approximately 5:30 a.m., on July 17, 2006, an individual entered the Subway while the store was closed. The individual gained access through the back door by using the security code to disarm the alarm system. The individual also used the security code to the safe and took over six hundred dollars. Six video cameras captured the entry and actions within the restaurant. The individual was wearing a mask and a glove on his right hand; however, he did not pull the mask over his face

1

until after entering the security code into the key pad at the back door. Law enforcement officers showed the videotape and still images from the videotape to several Subway employees, some of whom identified the individual in the images as Barnes. Barnes was charged with burglary, Idaho Code § 18-1401, and petit theft, I.C. §§ 18-2403(3), 2407(2). A jury found Barnes guilty on both charges. This appeal followed.

## II.

## ANALYSIS

Barnes raises several issues on appeal. First, Barnes claims that the district court erred by allowing lay witnesses to testify as to the identity of the individual captured on videotape. Second, Barnes claims that the district court erred by allowing a witness to testify about statements the witness made to police. Third, Barnes claims that the prosecutor committed misconduct by eliciting testimony as to Barnes' guilt and character. Finally, Barnes argues that the cumulative effect of these errors deprived Barnes of a fair trial.

A. **Security Videotape Identification Testimony.**

Prior to trial, the district court held that, subject to receipt of proper foundation for admission of the videotape, witnesses would be allowed to state their opinion as to the identity of the person depicted. The court noted that videotapes are within the definition of photographs, which are admissible if fairly representative and not simply related to a collateral issue. Idaho Rules of Evidence 1001 and 1004. The court stated that I.R.E. 701 permits a lay witness to express an opinion if rationally based upon their perception and helpful to a determination of a material fact. The court found that the testimony would be helpful to the determination of an ultimate issue in the matter, the identification of the perpetrator, and, while prejudicial to the defendant if identified, not unfairly prejudicial. The court rejected Barnes' objection that, pursuant to I.R.E. 403, the testimony was not relevant because it was for the jury to determine the identity of the individual on the tape.

After the first trial witness testified, Barnes again raised the issue and asked the court to revisit its prior ruling. Barnes cited *State v. Avelar*, 124 Idaho 317, 859 P.2d 353 (Ct. App. 1993) and I.R.E. 401 and argued that the identification of an individual from an image available to the jury is for the jury, not lay witness opinion testimony. The court again overruled the objection and held that the issue went to the weight, not the admissibility, of the testimony. The court noted that the individuals called to testify were familiar with the defendant. The court also

2

stated that persons familiar with an individual may have different perspectives than someone looking at an image of an unfamiliar person, stating:

> And I think generally individuals identify people from many factors that you can see in a videotape other than just the observation of the physical characteristics from whatever angle they may be taken from a party on a tape.
>
> We consider hair patterns, we consider posture. We consider unique movements, or expressions. We consider all types of things in determining whether or not somebody is who we perceive them to be. Can we be wrong? Certainly we can be wrong. That's why we have cross-examination. But to keep it out is in my opinion inappropriate.

After additional witnesses testified, Barnes again objected, citing as additional authority, *Carter v. State*, 598 S.E. 2d 76 (Ga. App. Ct. 2004), and again arguing that identification from the videotape is for the jury. The court reviewed the *Carter* decision and again overruled the objection noting:

> Here there is testimony that the defendant has changed his appearance since the alleged burglary by changing his hairstyle and losing weight. Thus, the testimony of witnesses as to his identity by persons who knew and dealt with him at the time is clearly relevant to assist the trier of fact. And the Court so rules.

At trial, three witnesses identified Barnes from images from the security videotape. The restaurant manager testified that he had observed Barnes in the restaurant at the beginning of virtually every shift that S.K. worked and that Barnes would stay for one-half hour to an hour on each occasion. He further testified that S.K. had worked three or four shifts each week for approximately two months before the burglary and that during this time the manager was present for one to three hours when S.K. began all of her weeknight shifts. When shown the video, he identified the person depicted as Barnes. The assistant manager also testified that she was always present, usually for an hour, when S.K. would arrive for her shifts which occurred at least three to four times a week. Barnes was at the Subway "a lot" at the beginning of S.K.'s shifts and noted that at the time of trial Barnes had a different haircut and had lost weight. She also identified Barnes from the videotape. Another employee, who worked with S.K. numerous days a week for approximately a month before the burglary, similarly testified that Barnes would accompany S.K. to most every shift and stay in the Subway for a period of time, usually one-half hour to an hour. She testified that she had looked at a still image from the videotape and identified Barnes. Lastly, S.K.'s father (G.K.) testified that he identified Barnes as the person in

a picture shown to him by police, but indicated that the picture he had been shown was not one of the trial exhibits.

The trial court has broad discretion in determining the admissibility of testimonial evidence. *State v. Smith*, 117 Idaho 225, 232, 786 P.2d 1127, 1134 (1990). A decision to admit or deny such evidence will not be disturbed on appeal absent a clear showing of abuse of that discretion. *Id.* We review questions of relevance de novo. *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993). A lower court's determination under I.R.E. 403 will not be disturbed on appeal unless it is shown to be an abuse of discretion. *State v. Enno*, 119 Idaho 392, 406, 807 P.2d 610, 624 (1991); *State v. Clark*, 115 Idaho 1056, 1059, 772 P.2d 263, 266 (Ct. App. 1989).

Idaho Rule of Evidence 701 provides:

> If the witness is not testifying as an expert, the testimony of the witness in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the testimony of the witness or the determination of a fact in issue, and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702.

Barnes contends that the identification testimony violated the second requirement of I.R.E. 701 because the jury could review the security video, still images from the security video, and a photograph showing Barnes' appearance at the time of the theft and determine for themselves whether Barnes was the individual depicted in the security video. The Idaho appellate courts have not yet addressed the admissibility of lay witness testimony involving identification of a person depicted in a security videotape, or in a still picture derived from the videotape.

Barnes cites to various federal and state court decisions that have addressed the issue of lay witness identification of individuals depicted in security videotapes.[1] Barnes urges this Court to adopt the following foundational standard:

---

[1] *United States v. Contreras*, 536 F.3d 1167, 1170-71 (10th Cir. 2008); *United States v. Langford*, 802 F.2d 1176, 1179 (9th Cir. 1986); *Sanders v. United States*, 809 A.2d 584, 593-95 (D.C. 2002); *Early v. State*, 543 So.2d 868, 868-69 (Fla. Dist. Ct. App. 1989); *Dawson v. State*, 658 S.E.2d 755, 760-61 (Ga. 2008); *Grimes v. State*, 662 S.E.2d 346 (Ga. Ct. App. 2008); *Carter v. State*, 598 S.E.2d 76 (Ga. Ct. App. 2004); *Commonwealth v. DeLong*, 888 N.E.2d 956, 962 (Mass. App. Ct. 2008); *Rossana v. State*, 934 P.2d 1045, 1048-49 (Nev. 1997).

> [I]n order for lay opinion testimony as to the identity of a person captured on surveillance video to be admissible, the State must establish the witness' personal familiarity with the defendant at the time of the alleged offense coupled with the particular identifying features or changes in appearance of the defendant that the jury would not be capable of perceiving on their own from a review of the videotape evidence.

Federal courts addressing this issue under Federal Rule of Evidence 701, which is identical to I.R.E. 701, have generally held that in order for lay opinion identification testimony to be admissible, it must be helpful to the jury, which requires that "there [be] some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury." *United States v. Farnsworth*, 729 F.2d 1158, 1160 (8th Cir. 1984).[2] These courts differ, however, in applying the "more likely to correctly identify" test. In *Pierce*, 136 F.3d at 774, the court stated that "whether a particular witness is better suited than the jury correctly to identify a defendant as the individual depicted in surveillance photographs turns on a number of factors." The pertinent factors were identified by the Massachusetts Appellate Court as follows:

> The quality of the photographic images matters; if they are neither "so unmistakably clear or so hopelessly obscure that the witness is no better-suited than the jury to make the identification," then lay opinion testimony may be admitted. *United States v. Jackman*, 48 F.3d 1, 5 (1st Cir. 1995). *See United States v. Wright*, 904 F.2d 403, 405 (8th Cir. 1990) (allowing testimony where "[t]he picture taken of [the defendant] as he removed his mask was not a model of clarity").
>
> The level of familiarity of the witness with the person shown in the photograph is also a factor. *See*, *e.g.*, *United States v. Barrett*, 703 F.2d 1076, 1085-1086 (9th Cir. 1983) (witness was defendant's girlfriend); *United States v. Farnsworth*, 729 F.2d 1158, 1160 (8th Cir. 1984) (one witness had met with the defendant at least seventy-five times; another about twenty times); *United States v. Wright*, *supra* at 405 ("[E]ach witness had seen Wright numerous times over an extended period of time."); *United States v. LaPierre*, 998 F.2d 1460, 1465 (9th Cir. 1993) (error to admit testimony where witness did not know defendant and had never seen him in person); *United States v. Jackman*, *supra* at 6-7 (witnesses had known the defendant for a long time and had seen him on many occasions);

---

[2]    *Contreras*, 536 F.3d at 1170-71; *United States v. Dixon*, 413 F.3d 540 (6th Cir. 2005); *United States v. Pierce*, 136 F.3d 770, 774 (11th Cir. 1998), *cert. denied*, 525 U.S. 974 (1998); *See also United States v. Jackman*, 48 F.3d 1, 4-5 (1st Cir. 1995); *United States v. Towns*, 913 F.2d 434, 445 (7th Cir. 1990); *United States v. Allen*, 787 F.2d 933, 936 (4th Cir. 1986), *vacated on other grounds*, 479 U.S. 1077 (1987).

*United States v. Pierce*, 136 F.3d 770, 775 (11th Cir.), *cert. denied*, 525 U.S. 974, 119 S.Ct. 430, 142 L.Ed.2d 350 (1998) ("[B]oth . . . witnesses had become familiar with Pierce's appearance and . . . his facial features through repeated contacts with [him] over significant periods of time."). *Cf. United States v. Jackson*, 688 F.2d 1121, 1123, 1125 (7th Cir. 1982), *cert. denied*, 460 U.S. 1043, 103 S.Ct. 1441, 75 L.Ed.2d 797 (1983) (admitting testimony even though witness had seen defendant only once before, but holding that the opportunity to observe the defendant goes to the weight, not the admissibility, of the testimony); *United States v. Allen*, 787 F.2d 933, 935-936 (4th Cir. 1986), *vacated on other grounds*, 479 U.S. 1077, 107 S.Ct. 1271, 94 L.Ed.2d 132 (1987) (same, but witnesses had known defendant for some time).

The courts also consider whether the defendant is disguised in the photograph or has changed his appearance since the time of the crime. *See, e.g.*, *United States v. Ingram*, 600 F.2d 260, 261 (10th Cir. 1979) (defendant's appearance had changed between time of the robbery and time of trial); *United States v. Borrelli*, 621 F.2d 1092, 1095 (10th Cir.), *cert. denied*, 449 U.S. 956, 101 S.Ct. 365, 66 L.Ed.2d 222 (1980) (defendant had changed hairstyle and grown a moustache); *United States v. Barrett*, *supra* at 1086 (defendant appeared clean-shaven at trial); *United States v. Farnsworth*, *supra* at 1160 (defendant had grown a full beard and the day of the robbery had worn a scarf over his face); *United States v. Lucas*, 898 F.2d 606, 610 (8th Cir.), *cert. denied*, 498 U.S. 838, 111 S.Ct. 112, 112 L.Ed.2d 81 (1990) (defendant appeared clean-shaven at trial); *United States v. Towns*, 913 F.2d 434, 445 (7th Cir. 1990) (defendant had worn stocking cap, sunglasses, and bulky clothing to the robbery); *United States v. Ellis*, 121 F.3d 908, 927 (4th Cir. 1997), *cert. denied*, 522 U.S. 1068, 118 S.Ct. 738, 139 L.Ed.2d 674 (1998) (defendants were wearing masks and hooded sweatshirts). *Cf. United States v. LaPierre*, *supra* at 1465 (holding it error to admit testimony where, among other things, there was no evidence that defendant's appearance had changed since the time of the robbery).

*Commonwealth v. Pleas*, 729 N.E.2d 642, 645-46 (Mass. App. Ct. 2000).

Regarding the familiarity factor, the *Contreras* court stated: "The witness's prior familiarity with the defendant's appearance is the most critical factor to determine if such a basis exists." *Contreras*, 536 F.3d at 1170. The court in *Sanders v. United States*, 809 A.2d 584, 593-95 (D.C. 2002), stated:

The majority of jurisdictions that have decided cases involving lay witness testimony identifying a person depicted in a videotape, or in a still picture derived from the videotape, have affirmed the admission of such testimony under F.R.E. 701, or an identical state evidentiary rule, provided the witness has at least some degree of familiarity with the person identified.[3]

---

[3] *See, e.g.*, *Allen*, 787 F.2d at 936 (admitting witness identification testimony where witnesses were familiar with the defendant and photos depicted only parts of defendant's face);

The *Allen* court noted:

> [T]estimony by those who knew defendants over a period of time and in a variety of circumstances offers to the jury a perspective it could not acquire in its limited exposure to defendants. Human features develop in the mind's eye over time. These witnesses had interacted with defendants in a way the jury could not, and in natural settings that gave them a greater appreciation of defendants' normal appearance. Thus, their testimony provided the jury with the opinion of those whose exposure was not limited to three days in a sterile courtroom setting.

*Allen*, 787 F.2d at 936. While the familiarity factor has been identified by some courts as the most critical factor, there are other factors, as outlined above, that courts have applied; however, they are not generally considered strict foundational requirements for the admission of the identification testimony. As stated in *Contreras*, "Although a change in appearance is one factor we take into account to determine if opinion identification testimony would be helpful to a jury, it is not a necessary factor." *Contreras*, 536 F.3d at 1171 (citation omitted). Furthermore, the Ninth Circuit "conclude[d] that the extent of a witness's opportunity to observe the defendant goes to the weight of the testimony, not to its admissibility." *United States v. Beck*, 418 F.3d 1008, 1015 (9th Cir. 2005). The *Beck* court held:

> In accord with the decisions of our sister circuits, we hold that whether a lay opinion is helpful depends on a totality of the circumstances including the witness's "[f]amiliarity with the defendant's appearance at the time the crime was committed," *Jackman*, 48 F.3d at 5, the witness's familiarity with the defendant's customary manner of dress, insofar as such information related to the clothing of the person depicted in the surveillance photograph, *see Pierce*, 136 F.3d at 774, whether the defendant disguised his or her appearance during the offense or altered his or her appearance before trial, *id*. at 775, and whether the witness knew the defendant over time and in a variety of circumstances, such that the witness's lay identification testimony offered to the jury "a perspective it could not acquire in its limited exposure" to the defendant, *Allen*, 787 F.2d at 936.
> The absence of any single factor will not render testimony inadmissible because cross-examination exists to highlight potential weaknesses in lay opinion testimony. *See*, *e.g.*, *Jackman*, 48 F.3d at 5. Also, the governing standard under

*United States v. Stormer*, 938 F.2d 759, 762 (7th Cir. 1991) (finding identification testimony admissible where witness acquainted with defendants for several years); *Wright*, 904 F.2d at 404-405 (admitting identification testimony where witnesses had known defendant for between two and thirteen years); *Langford*, 802 F.2d at 1179 (admitting testimony where witnesses encountered defendant numerous times).

Federal Rule of Evidence 701(b) assesses whether the lay witness identification testimony is potentially "helpful to . . . the determination of a fact in issue," in the totality of the circumstances, *see Pierce*, 136 F.3d at 774-75 (holding that the admissibility of lay witness identification testimony "turns on a number of factors"), and this assessment does not hinge on the presence of any particular factor.

*Beck*, 418 F.3d at 1015.[4]  The application of any one of these factors hinges upon its helpfulness to the jury to determine a fact in issue.  Thus, the existence of one or more of these factors in any given case indicates that there is "some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury." *Farnsworth*, 729 F.2d at 1160.

Barnes argues that the identifying witnesses' level of familiarity with Barnes was insufficient.  He argues that the fact that some of the witnesses did not know Barnes' name somehow disqualifies them from identifying him as the boyfriend of a co-worker.  He further argues that by the conclusion of the trial the jury would have as much familiarity with Barnes as almost all of the State's identifying witnesses.

The district court held that the witnesses each were familiar with Barnes and noted that "individuals identify people from many factors."  The district court continued:

> We consider hair patterns, we consider posture.  We consider unique movements, or expressions.  We consider all types of things in determining whether or not somebody is who we perceive them to be.  Can we be wrong?  Certainly we can be wrong.  That's why we have cross-examination.  But to keep it out is in my opinion inappropriate.

The district court required each witness to explain to the jury how they were familiar with Barnes before identifying him in the videotape or still photographs.  The Subway employees each testified that they often worked with S.K. and had seen Barnes come into the store regularly with her over a two-month period.  They all testified that Barnes was in the Subway three to four times each week when S.K. was working and stayed for one-half hour to an hour on each occasion.  While two of the employees did not know Barnes' name, they did identify him as S.K.'s boyfriend.  The manager testified regarding his familiarity with Barnes, "I'm a relatively

---

[4]      The *Beck* court held that the district court did not abuse its discretion when it allowed the defendant's probation officer to testify regarding his perception of the individual in a bank surveillance photograph where the probation officer had met with the defendant four times in a two-month period, for a total of approximately seventy minutes.

observant person and anybody that steps foot in my restaurant more than twice, I will recognize the next time they come in." When asked how he could determine that the individual in the videotape was Barnes, he stated, "Because he was in my store repeatedly throughout [S.K.'s] employment with the company." The assistant manager did not know Barnes' name but testified that he came to the Subway with S.K. "a lot" and that he was "there all the time." She also testified that he had lost weight and had a different haircut. The third Subway employee to identify Barnes testified that she "knew him from just coming in [to the Subway]." She stated that she would "be able to recognize him." When asked whether she had seen a still photograph from the security videotape and whether she recognized the individual in the photograph, she testified that it was "Sam Barnes." This is not a situation where the prosecutor called people "off the street" to come in and render an opinion as to whether the individual depicted in the security videotape was in fact Barnes. *See Woods v. State*, 13 S.W.3d 100, 103 (Tex. Ct. App. 2000). On the contrary, the Subway employees' testimony was consistent with what they had told the police shortly after the commission of the crime, which was near in time to their interactions with Barnes at the Subway. Furthermore, G.K. also identified Barnes and testified that Barnes had lived with him and his family for approximately two months and that he had known Barnes for approximately six to eight months.

As noted, an additional factor which may be considered in the determination of whether the testimony would be helpful to the jury is whether there were changes in the appearance of the defendant at the time of trial. In this case, there was testimony that by the time of trial Barnes' appearance had changed in that he had lost weight and had a different haircut. Barnes argues that the witness should have indicated how Barnes' hair was different and the extent of his weight loss. However, these arguments go to the weight of the testimony. The district court determined that the identification testimony would be helpful to the jury and properly considered the changes in Barnes' appearance in making that determination.

The quality of the photographs is another factor in determining whether the lay witness identification testimony would be helpful to the jury. In this case, the photographs were not unmistakably clear nor were they hopelessly obscure such that the witnesses were no better-suited than the jury to make the identification. *See Jackman*, 48 F.3d at 5. The photographs were taken from above at an angle that did not capture the perpetrator's full face. The images were not a "model of clarity." *See Wright*, 904 F.2d at 405. Thus, the testimony as to Barnes'

identity by individuals who knew and dealt with him at the time was helpful to the jury due to the quality of the videotape and still photographs.

We conclude that the trial court did not abuse its discretion by admitting into evidence the opinions of the lay witnesses who identified Barnes as the man appearing in the security videotape or the photographs derived from the videotape. The opinion of each lay witness was rationally based on the perception of the witness, and the testimony was helpful to the jury in the determination of a fact in issue. The lay witnesses were familiar with Barnes and his appearance at the time the crime was committed. After having the same opportunity as the jury to view the identification evidence and hear testimony of the witnesses, the district court twice adhered to its determination that the identification testimony of witnesses familiar with Barnes was helpful to the jury. The district court properly considered the relevant foundational factors. The district court was aware of the significance of the testimony and reached its decision by an exercise of reason. Therefore, the district court's determination that, based upon the totality of the circumstances, the witnesses were more likely to correctly identify the defendant from the videotape and/or photograph than the jury was not erroneous.

Even where otherwise admissible, testimony may still be impermissible if its unfairly prejudicial effect outweighs its probative value. I.R.E. 403. It is clear that the district court was aware of the fact that identification testimony would be prejudicial to Barnes' case; however, the district court determined at the outset that it would not be unfairly prejudicial. Additionally, when Barnes objected to further identification testimony being offered on grounds that it would be cumulative, the district court held that police officers would not be allowed to identify Barnes as the individual depicted in the security videotape or still images. The district court stated:

> You have gone with the lay witnesses who have stated their knowledge of the defendant, who have stated that they recognized him because they had seen him on a regular basis. And I do have some difficulty in allowing police officers now to come in and add their opinions as to his identity based upon things that the defense has not had an opportunity to study or determine or find out whether there is any expert witness that can answer that opinion testimony.
> Police officers have a standing with a jury. I think a lay person who is just saying, "yeah, I recognize him. I've seen him. I've got personal knowledge of him. I've seen him an hour a day, four days a week." That's appropriate testimony if there is any question with regard to identity.

While we do not hold that police officers may not testify as to identification in the proper circumstances, we hold that the district court properly engaged in an analysis of the probative value of the testimony versus any unfairly prejudicial effect and acted within its discretion.

**B.      Testimony Regarding Out-of-Court Statements Made to Police.**

Barnes contends that certain testimony of G.K., the father of Barnes' girlfriend, regarding statements he made to the police, were inadmissible hearsay. The State counters that the statements were not being offered to prove the truth of the matters asserted, but rather simply providing context for the officers' meeting with G.K. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." I.R.E. 801(c); *State v. Gomez*, 126 Idaho 700, 704, 889 P.2d 729, 733 (Ct. App. 1994). Hearsay is inadmissible unless otherwise provided by an exception in the Idaho Rules of Evidence or other rules of the Idaho Supreme Court. I.R.E. 802.

Barnes made two hearsay objections during G.K.'s testimony. The first objection was in response to the prosecutor's question as to whether the officers asked G.K. if he knew Barnes. The district court overruled the objection holding that the question simply placed the conversation in context. The second objection was in response to the prosecutor's question as to what G.K. told the police:

> Q.      [Prosecutor]:   Did they ask if you knew Sam Barnes?
> A.      In a roundabout way, yes.
> Q.      Okay. Let me phrase that better. Did they ask you about [S.K.'s] boyfriend?
> A.      Yes.
> Q.      Okay. And what did you tell them?
> A.      I told them --
> [Defense Counsel]:   Objection.   Hearsay.   This is his out-of-court statement now being offered in court, Your Honor. What he said to the detectives isn't relevant and it is hearsay even though he said it.
> [The Court]:   No, it's not. The Court will overrule the objection.
> [Prosecutor]:   Thank you, Your Honor.
> Q.      What did [sic] tell them?
> A.      I'm sorry. Can you ask the question again?
> Q.      Well, they asked you about [S.K.'s] boyfriend?
> A.      Yes.
> Q.      And then what did you tell them about [S.K.'s] boyfriend?
> A.      That I knew him. That he'd stayed there. And that I saw him periodically. Didn't come around a lot anymore. That was basically it.

As to this objection, G.K. had previously testified, without objection, as to his familiarity with Barnes. Thus, the testimony complained of was already before the jury. Even were we to conclude that this testimony was inadmissible hearsay, any error was harmless. *See State v. Sheldon*, 145 Idaho 225, 230, 178 P.2d 28, 33 (2008) (to hold an error harmless, this Court must declare a belief, beyond a reasonable doubt, that there was no reasonable possibility that the evidence complained of contributed to the conviction).

After the objection noted above, G.K. continued to testify about what he told the police. Barnes contends that this testimony was also hearsay and should not have been admitted. However, no further hearsay objections were made. While Barnes contends that the subsequent testimony was inadmissible hearsay, he provides no cogent reason or argument for why we should address the subsequent testimony when no objection was made. A party waives an issue on appeal if either authority or argument is lacking. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). "It is a fundamental tenet of appellate law that a proper and timely objection must be made in the trial court before an issue is preserved for appeal." *State v. Carlson*, 134 Idaho 389, 398, 3 P.3d 67, 76 (Ct. App. 2000). Barnes did not ask for a continuing objection and has failed to demonstrate that we should review the subsequent questions under the same objection. Therefore, the issue regarding whether G.K.'s subsequent testimony was hearsay is not preserved for appeal.

## C.     Prosecutorial Misconduct.

Barnes contends that the State improperly elicited testimony from G.K. that he believed Barnes was guilty and that he thought Barnes was a "clown." While Barnes claims that he objected to these statements on grounds of hearsay, no objection was made to either question. Barnes argues, however, that the questioning constituted prosecutorial misconduct, rising to the level of fundamental error, thus depriving Barnes of a fair trial.

While our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, he or she is nevertheless expected and required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial. *Id.* A fair trial is not necessarily a perfect trial. *Id.*

When there is no contemporaneous objection, a conviction will be reversed for prosecutorial misconduct only if the conduct is sufficiently egregious so as to result in

12

fundamental error. *Id.* Prosecutorial misconduct rises to the level of fundamental error when it is calculated to inflame the minds of jurors and arouse prejudice or passion against the defendant, or is so inflammatory that the jurors may be influenced to determine guilt on factors outside the evidence. *State v. Kuhn*, 139 Idaho 710, 715, 85 P.3d 1109, 1114 (Ct. App. 2003). However, even when prosecutorial misconduct has resulted in fundamental error, the conviction will not be reversed when that error is harmless. *Field*, 144 Idaho at 571, 165 P.3d at 285. The test for whether prosecutorial misconduct constitutes harmless error is whether the appellate court can conclude, beyond a reasonable doubt, that the result of the trial would not have been different absent the misconduct. *State v. Pecor*, 132 Idaho 359, 368, 972 P.2d 737, 746 (Ct. App. 1998).

When a defendant does not object at trial, our inquiry is three-tiered. *See Field*, 144 Idaho at 571, 165 P.3d at 285. First, we determine factually if there was prosecutorial misconduct. If there was, we determine whether the misconduct rose to the level of fundamental error. Finally, if we conclude that it did, we then consider whether such misconduct prejudiced the defendant's right to a fair trial or whether it was harmless.

Barnes cites to the following testimony regarding G.K.'s conversation with the police to support his claim:

> Q. Did you say, and I quote, "I bet he did it"?
> A. Very possibly, yes.
> Q. Okay. Did you call him a clown?
> A. Yes.

The State contends that the prosecutor was establishing the context of G.K.'s conversation with the police and that the prosecutor's actions did not constitute misconduct. However, context had already been established. These questions had an improper purpose. Eliciting improper testimony may constitute prosecutorial misconduct. *See State v. Perry*, 144 Idaho 665, 169 P.3d 49 (Ct. App. 2007). Direct testimony as to guilt or innocence invades the province of the jury. *See State v. Walters*, 120 Idaho 46, 813 P.2d 857 (1990). By recounting G.K.'s statement to the police that "I bet he did it," the prosecutor was seeking an improper opinion of guilt. Referencing Barnes as a clown was meant to improperly impugn his character in violation of I.R.E. 404 However, we need not determine whether the prosecutor's misconduct rose to the level of fundamental error because we conclude that the result of the trial would not have been different. Therefore, even though the prosecutor improperly elicited opinion testimony as to

Barnes' guilt or innocence and his character, the error was harmless beyond a reasonable doubt considering all of the other evidence presented against Barnes.

**D.    Cumulative Error.**

Barnes contends that even if any trial errors were harmless when viewed in isolation, their cumulative effect deprived Barnes of a fair trial. The cumulative error doctrine refers to an accumulation of irregularities, each of which by itself might be harmless, but when aggregated, show the absence of a fair trial in contravention of the defendant's right to due process. *State v. Moore*, 131 Idaho 814, 823, 965 P.2d 174, 183 (1998). The presence of errors alone, however, does not require the reversal of a conviction because, under due process, a defendant is entitled to a fair trial, not an error-free trial. *Id.* The cumulative effect of the errors which we have noted did not deprive Barnes of a fair trial.

### III.
### CONCLUSION

The district court did not abuse its discretion when it allowed lay witnesses to express an opinion as to the identity of the individual depicted on the security videotape and still photographs. Any error as to G.K.'s testimony to which a proper hearsay objection was made was harmless and any claim of error regarding his testimony as to which no hearsay objection was made was not preserved for appeal. The prosecutor's improper questions eliciting testimony as to the guilt and character of Barnes were, although misconduct, harmless in light of the strength of the evidence supporting the verdict. The errors at trial did not deprive Barnes of a fair trial. The judgment of conviction is, therefore, affirmed.

Chief Judge LANSING and Judge GUTIERREZ, **CONCUR.**