THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALFRED BRACEY, Defendant-Appellant.

First District (3rd Division)    No. 61915

Opinion filed August 24, 1977.

Francis E. Andres, Lawrence J. Suffredin, Jr., and Carl P. Clavelli, all of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Joan S. Cherry, Assistant State's Attorneys, of counsel), for the People.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

A jury convicted the defendant, Alfred Bracey, of the murder of Arthur Marsh, of the attempt murder of Joe Watson, of aggravated battery, of the unlawful use of weapons and of the felonious unlawful use of weapons. He was sentenced to 15 to 30 years in the penitentiary for the murder of Marsh and 4 to 16 years for the attempt murder of Watson; the aggravated battery verdict was merged into the attempt murder verdict. The unlawful use of weapons count was merged into the conviction for the felonious unlawful use of weapons charge, and Bracey was sentenced to 3 to 9 years in the penitentiary on that verdict. All sentences were to run concurrently.

On appeal, Bracey seeks the reversal of his convictions, raising four issues for review: (1) whether he was denied his statutory and constitutional rights to a speedy trial; (2) whether he was deprived of a fair and impartial trial because of the joinder of an enhanced weapons count with the other unrelated charges brought against him; (3) whether he was denied due process of law because certain identification evidence was admitted at trial, and (4) whether the unauthorized communications between the court and the jury deprived the defendant of his constitutional right to a trial by jury.

The shooting for which Bracey was convicted occurred on January 2, 1972, in the Flamingo Lounge in Chicago. On that date, between 2 a.m. and 3 a.m., a man entered the lounge, walked to a point approximately midway down the length of the bar and, after standing silently for about two or three minutes, took a gun from his pocket and began firing. There is some discrepancy as to the number of shots which he fired; one witness claimed he heard four to five shots while another witness testified as to only two shots. At the time of the shooting there were approximately 15 to 25 people in the lounge; one patron, Arthur Marsh, was killed and another patron, Joe Watson, was wounded. Following the shooting the man returned the gun to his pocket and walked out of the bar.

The police arrived at the lounge several minutes after the altercation. Lionell Stansberry, the manager of the lounge, and Cedric Tibbs, a patron, provided the police with a general description of the assailant;

both described him as a black approximately six feet tall, weighing about 150 pounds, with a short "natural" haircut, and wearing a black and gray "checkered" or "plaid" three-quarter length coat with dark pants. This description was dispatched over the police radio.

Officers Cooley and Starcevich of the Chicago Police Department, patrolling in the near vicinity, heard the broadcast. They subsequently questioned five individuals meeting the radioed description of the gunman; the last one questioned was Bracey. The officers first noticed Bracey as they observed an altercation across the street from their patrol car. Officer Starcevich testified that as he left his patrol car and began crossing the street to investigate, he noticed that one of the participants in the disturbance matched the radio description of the gunman at the Flamingo Lounge. As he drew closer, Starcevich testified, he saw a bulge in the rear pants pocket of the individual matching the assailant's description; a "pat down" revealed that the man was carrying a .38-caliber Colt revolver. This individual originally identified himself as Alvin Jones, but subsequent investigation revealed that his name was Alfred Bracey. At the time, Bracey was wearing a gray and black checkered coat and dark pants. He was arrested for the unlawful use of weapons.

Upon instructions from their supervisor, the officers proceeded to take Bracey to the Flamingo Lounge for the purpose of identification. The police summoned Stansberry and Tibbs out to the patrol car where Bracey was sitting handcuffed in the rear seat. The defendant was removed from the car. Standing on the sidewalk beside the patrol car, with his hands still bound behind his back, Stansberry and Tibbs identified Bracey as the assailant.

Although Bracey was arrested on January 2, 1972, his trial did not commence until April 30, 1974. Bail was originally set at $50,000, and subsequently increased to $100,000. Since Bracey was unable to make bond, he was in custody from the time of his arrest until the time of his trial. During the course of proceedings, the defendant had twice moved for dismissal of the action on the grounds that his right to a speedy trial had been denied; both motions were denied.

## 1.

Bracey's first contention is that his right to a speedy trial has been abridged. The right to a speedy trial has both constitutional and statutory dimensions. Both the United States Constitution (U.S. Const., art. I, amend. VI) and the Illinois Constitution (Ill. Const. 1970, art. I, §8) enunciate a right to a speedy trial. In addition, section 103—5 of the Code of Criminal Procedure (Ill. Rev. Stat. 1971, ch. 38, par. 103—5(a)) mandates specific time limits within which a defendant must be brought to trial. Where, as in the present situation, the defendant is in custody, he

must be tried within 120 days "unless delay is occasioned by the defendant." (Ill. Rev. Stat. 1971, ch. 38, par. 103—5(a).) Under the law controlling the present case (for offenses allegedly committed before March 1, 1977) where the delay is attributable to the defendant, the statutory period is tolled and a new period begins to run on the date to which the trial was delayed. (*People v. Donalson* (1976), 64 Ill. 2d 536, 356 N.E.2d 776; *People v. Zuniga* (1973), 53 Ill. 2d 550, 293 N.E.2d 595.) On appeal the defendant raises both statutory and constitutional claims.

Bracey first argues that between September 12, 1972, and April 16, 1973, a period of some 216 days, he continually answered in court as being ready for trial but that due to delays incurred either by the State or by the court, he was not brought to trial. The failure to try him, during this 216-day period, the defendant claims, constitutes a violation of the 120-day rule. The State counters that both the continuance granted on November 2, 1972, and the continuance granted on December 20, 1972, were sufficiently chargeable to the defendant so as to toll the running of the 120-day period. It is uncontroverted that prior to September 12, 1972, and after April 16, 1973, Bracey occasioned delay which effectively prevented a violation of the 120-day rule. We agree with the State that the delay in the trial occurring on November 2, 1972, was sufficiently "occasioned by the defendant" within the meaning of section 103—5(a) of the Code of Criminal Procedure (Ill. Rev. Stat. 1971, ch. 38, par. 103—5(a)) so as to toll the running of the 120-day period.

The question of the cause of the delay in the trial on November 2, turns upon the characterization of the following colloquy which took place in court on that date:

"[Mr. Welch, appearing for defense counsel Mr. Andrew; Mr. DiNatale appearing for the State.]

THE COURT: What's your position this morning, Mr. Welch?

MR. WELCH: May I speak to the State's Attorney for a moment?

THE COURT: Yes.

[Short conference had between the State's attorney and the defense attorney.]

MR. WELCH: Your Honor, I understand there may be other business in the court today. There are cases set for trial. Mr. Andrew himself is on trial before Judge Meyer in the Civic Center. That's why he asked me to come out here.

That's our situation.

THE COURT: Well, will this be a by agreement continuance?

MR. WELCH: Well, we prefer frankly to keep the term running. It's only a half a month old or so. If we could get an order of court or a motion State.

THE COURT: Mr. State's Attorney, are we going to trial on that Dominique matter?

MR. DINATALE: I can't in good faith answer ready on this Bracey case. We do have some of the witnesses here this morning. But we do have two other matters which were set first. The witnesses are here.

THE COURT: Order of court, December 20th."

It is Bracey's position that the continuance was granted by the court on its own motion due to the congested nature of the court's docket and that such a delay cannot be charged to the defendant. The State, on the other hand, contends that although the continuance was entered on the record as by order of the court, the delay was in fact attributable to the absence of the defense counsel and therefore should be charged to the defendant. At the very least, the State suggests, the continuance was granted "by agreement" in which case the 120-day period is still tolled.

■■ The attorney of record for Bracey was engaged at trial in another courtroom; while an associate did appear in court, there is no indication that he had any witnesses present or that he, himself, was prepared to try the case. Prior to reporting his status to the court, the associate first requested a conference with the State's attorney and then immediately indicated that he wished to have the case continued. Following the conference with the defense counsel, the State's attorney indicated his agreement with continuing the case, suggesting that only some of the witnesses were available. Given these circumstances, we hold that the continuance granted on November 2 was by agreement, even though the continuance was entered on the record as "order of court, December 20." The defendant may be charged with a delay even where the record attributes the continuance to another party. *People v. Caruth* (1972), 4 Ill. App. 3d 527, 281 N.E.2d 349.

■■ Where a continuance is granted with the agreement of the defendant, the delay, for the purposes of the 120-day rule, will be charged to the defendant. (*People v. Donalson* (1976), 64 Ill. 2d 536, 356 N.E.2d 776; *People v. Beyah* (1976), 42 Ill. App. 3d 962, 356 N.E.2d 960.) The statutory 120-day period was thus tolled on November 2, 1972, and a new 120-day period began to run on December 20, 1972, the date to which the trial was continued. Since this 120-day period would not run until after the continuance requested by the defendant on April 16, 1973, the 120-day rule has clearly not been violated. Because we have found that the defendant was chargeable with the delay on November 2, we do not need to examine the State's claim that the defendant had caused the delay on December 20.

■■ Bracey's contention that his constitutional right to a speedy trial has been abridged also fails. His argument rests upon the fact that some

28 months passed from the time of his arrest until the time of his trial. However, as Bracey himself admits, out of approximately 26 continuances granted during the pendency of this prosecution, at least 15 were at the request of or with the agreement of the defendant. Considering the extensive contribution of the defendant, through his counsel, to the 28-month delay, we cannot say that the defendant's constitutional right to a speedy trial, under either the Illinois Constitution or the United States Constitution, has been abridged. *Barker v. Wingo* (1972), 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182; *People v. Henry* (1970), 47 Ill. 2d 312, 265 N.E.2d 876; *People v. Tetter* (1969), 42 Ill. 2d 569, 250 N.E.2d 433.

## 2.

■■ The second error raised by Bracey relates to the refusal of the trial judge to sever the enhanced weapons count from the other charges for the purpose of trial. Prior to trial, the defendant had twice moved for severance of the enhanced weapons count or, in the alternative, to stipulate to the prior crime element of that count; both motions were denied. In addition, the defendant attempted to waive a trial by jury on the enhanced weapons count, a request which was also denied. On appeal, Bracey now claims that the joinder of the enhanced weapons count with the other charges caused him undue prejudice in that the jury, while adjudicating his guilt on those unrelated charges, had available evidence of his 1968 conviction for armed robbery. We agree that the joinder of the enhanced weapons count with the other unrelated charges caused the defendant undue prejudice and that his convictions must therefore be reversed.

In Illinois the statute governing the crime of the unlawful use of weapons is in the nature of a recidivist statute so that an individual found guilty of the unlawful use of a weapon may suffer an enhanced penalty if he has a prior criminal record. Where, as in the present case, the conviction for the unlawful use of a weapon is based upon the act of carrying a concealed weapon, the violator is normally to be charged as a Class A misdemeanant; however, if the violation has occurred within five years of either the individual's release from confinement in a penitentiary for a felony conviction or within five years of the felony conviction itself, the violation is to be treated as a Class 3 felony. (Ill. Rev. Stat. 1971, ch. 38, par. 24—1(b).) Since the defendant had been convicted in 1968 of armed robbery, a conviction for which he was confined in the penitentiary until September 1970, a conviction on the felonious unlawful use of weapons count would make the defendant subject to the enhanced penalty.

Where the enhanced weapons violation has been charged, the State must both plead and prove the prior conviction. (*People v. Ostrand*

(1966), 35 Ill. 2d 520, 221 N.E.2d 499.) Hence, the indictment which was read to the jury at the start of the trial included allegations of Bracey's prior conviction. In addition, a certified statement of conviction stating that the defendant had been convicted of armed robbery in 1968 was also read to the jury and admitted into evidence. Because the trial judge had not severed the felonious unlawful use of weapons count from the other unrelated charges brought against the defendant, the jury was informed of Bracey's prior conviction.

Evidence which directly, or by inference, tends to show that the accused has committed another criminal offense is inadmissible where its only value is to create an inference that because an individual has committed other crimes he is more likely to have committed the one for which he is on trial. (*People v. Lehman* (1955), 5 Ill. 2d 337, 125 N.E.2d 506; *People v. Trejo* (1976) 40 Ill. App. 3d 503, 352 N.E.2d 68.) Where such evidence has been revealed to a jury, even if for lawful reasons, the danger arises that the jury will infer a criminal propensity from those convictions. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695.) Therefore, the supreme court in *People v. Edwards* (1976), 63 Ill. 2d 134, 345 N.E.2d 496, found that a defendant suffers severe prejudice where a jury learns of the defendant's prior convictions through an indictment on an enhanced weapons count while adjudicating his guilt on other unrelated charges. In *Edwards* the defendant had been charged in a three-count indictment—with the offense of armed robbery; with the offense of unlawful use of weapons within five years of a felony conviction, a felony. The defendant was convicted of armed robbery, robbery and unlawful use of weapons and was sentenced for the offense of armed robbery and for the unlawful use of weapons. The Supreme Court found that while the procedure of trying all the charges together did not violate the constitutional standards established in *Spencer v. Texas* (1967), 385 U.S. 554, 17 L. Ed. 2d 606, 87 S. Ct. 648, such a procedure did constitute an abuse of the trial judge's discretionary power to sever charges where it appears likely that a defendant will be prejudiced if all the charges are joined. (Ill. Rev. Stat. 1975, ch. 38, pars. 114—8, 3—3(c).) In *Edwards* the court stated: "We find that the joinder of the armed robbery and felonious unlawful use of a weapon charges created such a strong possibility that the defendant would be prejudiced in his defense of the armed robbery charge that it was an abuse of the trial court's discretion to deny a severance." *People v. Edwards* (1976), 63 Ill. 2d 134, 140.

The State's attempt to distinguish the circumstances of the present case from those in *Edwards* is ineffective. The State first argues that the prejudicial effect caused by the admission of the prior conviction was greater in *Edwards* because the jury was exposed to an extensive cross-

examination of the defendant on the subject of the prior convictions as well as learning of the prior convictions through the reading of the indictment and the stipulation by the parties as to the validity of the prior convictions. However, it is the initial exposure of the jury to the prejudicial evidence which causes the harm; thus, we do not believe that the court in *Edwards* meant to have the issue of severance turn upon the extent to which the jury is exposed to the prior conviction. In the present case the defendant did not testify.

The State also argues that, in the present case, any prejudicial effect was cured through the rendering of rather extensive instructions to the jury on the limits to the use of prior convictions in their deliberations. The jury had been told to follow all of the instructions and not to single out certain ones and disregard the others. The court further cautioned that "any evidence received for a limited purpose should not be considered by you for any other purpose." Then more specifically, the jury was informed of the elements of the crime of the felonious unlawful use of weapons and was reminded that the prior conviction which they had learned of in the indictment should be considered only as it relates to this crime. However, on closer examination, these instructions do not greatly differ from those proffered in *Edwards*. There the jury was instructed that the indictment was not evidence but merely a formal accusation. Furthermore, the jury was told that the evidence of the prior conviction was to be considered solely in determining the defendant's credibility as a witness and not of the defendant's guilt. While it is true that the jury was not given a specific instruction on the crime of the felonious unlawful use of weapons, and that the instruction as to credibility was erroneous (*People v. Edwards*), what is important is that the jury was clearly told not to use the prior conviction as evidence of guilt.

We are skeptical over the ability of such limiting instructions to prevent prejudice arising from the admission of prior convictions. Where such prior convictions have erroneously been placed before the jury, the limited ability of such instructions to cure that error has long been recognized. (*People v. Gregory* (1960), 22 Ill. 2d 601, 177 N.E.2d 120; *People v. Pitts* (1971), 1 Ill. App. 3d 120, 273 N.E.2d 664; *People v. Colston* (1967), 81 Ill. App. 2d 75, 225 N.E.2d 801.) Further, the supreme court when constructing a vehicle to limit the introduction of prior convictions into evidence for the purposes of impeachment of the defendant-witness refused to rely upon limiting instructions to prevent potential prejudice. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695.) If such limiting instructions were insufficient to prevent the defendant from being prejudiced by the introduction of evidence of his prior convictions where such evidence was offered to impeach that defendant's credibility, it is difficult to see how such instructions can

effectively prevent prejudice where the evidence was offered to establish an element of the crime of the felonious unlawful use of a weapon. We believe, therefore, that, as in *Edwards,* it was reversible error for the trial judge to refuse to grant the defendant's motion for severance. The improper admission of the defendant's prior convictions requires that the charges as to murder, attempted murder and aggravated battery must be reversed. In addition, since the defendant had a right to have his weapons charges tried separate from those other counts, we feel compelled to reverse the weapons counts as well. We, therefore, reverse the defendant's convictions and remand this matter to the trial court for a new trial with the direction that the enhanced weapons count be tried separate and apart from the other counts.

### 3.

Bracey next claims that evidence of the identification by Stansberry and Tibbs was improperly admitted at trial because the pretrial showup at which that identification was made was unnecessarily suggestive. Since this issue will unquestionably arise in the retrial of the charges against Bracey, we feel that it is necessary to address it at this time.

Following his apprehension, Bracey was immediately taken back to the Flamingo Lounge where Stansberry and Tibbs positively identified him as the gunman. This identification took place approximately 15 minutes after the shooting occurred. The defendant was shown to the witnesses while standing alone on the sidewalk outside the lounge, with his hands handcuffed behind his back. Prior to trial Bracey had moved to suppress this evidence, but the motion was denied. The defendant now claims on appeal that the denial of that motion abridged his right to due process of law; we do not agree.

■■ ■ The practice of showing suspects singly to persons for the purpose of identification, rather than as a part of a lineup, has been widely condemned (*Stovall v. Denno* (1967), 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967; *People v. McMath* (1970), 45 Ill. 2d 33, 256 N.E.2d 835), but such a practice is not inherently unacceptable. Whether the identification resulting from a showup is to be suppressed depends upon whether the confrontation, when viewed in the "totality of the circumstances," was so unnecessarily suggestive and conducive to irreparable mistaken identification that the defendant had been denied due process of law. (*Stovall v. Denno; People v. Blumenshine* (1969), 42 Ill. 2d 508, 250 N.E.2d 152.) Thus, where under the "totality of the circumstances," the identification was reliable even though the confrontation procedure was suggestive, due process will not be abridged. (*Neil v. Biggers* (1972), 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375.) The Illinois Supreme Court has also recognized the existence of certain "justifying or saving

circumstances" which serve to support the use of pretrial showups rather than lineups. (*People v. Blumenshine.*) One such circumstance is where prompt identification was necessary to determine whether the defendant was the offender or whether the officers should continue the search. *People v. McMath.*

We believe that like the situation in *McMath*, the use of the showup in this instance was justified by the need for the police to obtain a prompt identification. The identification took place approximately 15 minutes after the altercation. This short time span meant that not only was the memory of the assailant's appearance fresh in the minds of the witnesses (*Neil v. Biggers; People v. Prignano* (1971), 2 Ill. App. 3d 1063, 278 N.E.2d 128), but that if Bracey was not the assailant, the police would still have time to continue their search. This need for a prompt identification is particularly crucial where, as here, the identification rests upon the description of the gunman's clothing.

Furthermore, while we agree that some of the elements of the identification procedure used in this instance were questionable, we believe that under the "totality of the circumstances" the identification was reliable even though the confrontation procedure was suggestive. Of particular import is the identification by Stansberry, the manager of the lounge. During the course of the altercation he was able to get a good view of the assailant including both profiles, as well as a frontal view of his face. It is true that it was dark in the lounge. However, Stansberry, as manager, was accustomed to observing customers in those darkened conditions; in fact, he first noticed the assailant because the individual was not a regular customer. Although Stansberry was standing with Tibbs at the time of the showup, there was no equivocation in his identification. Given these circumstances, we cannot say that the motion to suppress the identification evidence should have been granted.

4.

Bracey's final issue relates to the propriety of the communications between the judge and the jury outside the hearing of the defendant or his counsel. Since on retrial it is unlikely that such situation will occur again, we feel that it is unnecessary for us to address this issue.

For the foregoing reasons the judgments of the Circuit Court are reversed and remanded for a new trial in a manner consistent with the views expressed in this opinion.

Reversed and remanded with directions.

SIMON, P. J., and McNAMARA, J., concur.