**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 180441-U

Order filed March 10, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois. |
| Plaintiff-Appellee, | ) | |
| | ) | Appeal No. 3-18-0441 |
| v. | ) | Circuit No. 17-CF-168 |
| | ) | |
| MICHAEL R. HOWARD, | ) | |
| | ) | Honorable Kevin W. Lyons, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHMIDT delivered the judgment of the court.
Justices Daugherity and Holdridge concurred in the judgment.

**ORDER**

¶ 1     *Held*:   Defense counsel provided ineffective assistance for failing to include in his posttrial motion the trial court's error in refusing to sever the charges.

¶ 2     Defendant, Michael R. Howard, appeals his convictions and sentences. He contends that counsel provided ineffective assistance for failing to include a challenge to the trial court's decision to not sever the charges in a posttrial motion. We affirm in part, reverse in part, and remand for a new trial.

¶ 3                                    I. BACKGROUND

¶ 4          The State charged defendant with felony murder (720 ILCS 5/9-1(a)(3) (West 2016)),

armed robbery (*id.* §18-2(a)(4)), and unlawful use of a weapon by a felon (*id.* § 24-1.1(a)). The

charges were based on the allegation that defendant, along with Samantha Gordon and Gemia

Shird, attempted to rob the victim, Garrison Collins. During the robbery, defendant shot and killed

the victim.

¶ 5          Prior to the trial, the defense asked the court to "strike references of the conviction for

felony," but the State objected. The State argued that the prior felony was an element of the offense

that the jury needed to decide. The court said, "We could bifurcate it." It then stated, "I don't want

to do that." The court decided that it would instruct the jury that "the defendant is charged with

the offense of unlawful possession of [a] weapon by a felon in that he knowingly had in his

possession a firearm, being a handgun, and has been previously convicted of a felony in Illinois."

The court would not disclose the nature of defendant's prior felony.

¶ 6          The cause proceeded to trial. Dan Brankle lived in a sectioned basement with the victim.

He testified that at around midnight on February 27, 2017, he was home watching television and

talking with the victim. The victim received a phone call and told Dan, "[t]hat was Sam. I'm getting

ready to go get her." The victim left the basement and returned between 12:10 and 12:15 a.m.

When the victim returned, Dan was sitting in his section of the basement. He heard the door open

and looked to see who had entered the basement. He saw a white woman with strawberry-blond

hair with the victim. The two entered the victim's room, which was about three feet from Brankle's

room. A few minutes later, the victim asked Brankle if he wanted to smoke crack. Brankle went

into the victim's room and took crack from the victim. The victim introduced Brankle to Sam.

Brankle left and returned to his living area.

¶ 7        Once Brankle returned to his living area, he heard the victim's door open. He heard someone walk toward the bathroom. Brankle could not see who walked by but noticed that the person was using their cell phone as if to try to find the bathroom light switch. Brankle assumed it was Sam since the victim was familiar with the basement. Brankle believed that Sam left the bathroom a few seconds later. He did not hear the toilet flush, or the water run. Sam then returned to the victim's room and closed the door. Shortly after, Brankle heard someone run down the stairs and stop outside of the victim's door. Brankle heard the door open and then he heard the individuals talking. Though he could not make out exactly what was said, he heard an exchange of words and a loud "pop." Brankle heard footsteps leave the basement. Brankle then went into the victim's room and found the victim with a gunshot wound to his neck.

¶ 8        The State presented a video of defendant's interrogation with police. In the interview, defendant explained that he shot the victim in self-defense. The original plan, defendant claimed, was for Sam to get money from the victim by "turning a trick." Sam had gone inside with the victim while defendant and Gemia Shird waited in their vehicle. Sam was texting Gemia while she was with the victim, but defendant said that he did not read the messages. Eventually, Sam texted Gemia telling her that she was ready. Defendant went inside the house to get Sam, though the original plan was for Gemia to go inside to get Sam. When defendant entered the victim's room, the victim hit defendant. Defendant responded by hitting the victim in the face. Defendant's hand had been in his pocket holding a gun. Defendant raised the gun and hit the victim. The gun fired. Defendant and Sam ran back to the vehicle. Defendant did not realize that Sam had taken the victim's wallet until they were driving away in their vehicle.

¶ 9        Sam testified for the State. However, prior to her testimony, defense counsel and the court discussed introducing Sam's sentencing agreement with the State. At the time, Sam was in jail

after being tried and convicted by a different jury of the felony murder and armed robbery due to her role in the crime. Sam and the State had reached a sentencing agreement, which required Sam to testify against defendant in this case. The defense sought to use the agreement and her prior testimony for impeachment purposes.

¶ 10       Sam testified and directly contradicted the testimony that she gave at her trial four months earlier. She acknowledged that she was currently in jail as she had already been tried and convicted by a different jury of the felony murder and armed robbery. She also acknowledged that she had reached an agreement with the State that she would testify against defendant in exchange for the State to recommend a sentence at the low end of the statutory range. She also planned to appeal and seek an even lower sentence. However, her sentencing hearing was postponed until after defendant's trial.

¶ 11       On February 27, Sam sent the victim a text message asking for gas money. He met her at a Kroger gas station. She had known the victim and Gemia for about six months to a year at the time. She would perform sex acts for the victim in exchange for money.

¶ 12       At the time she met the victim at the gas station, both Gemia and defendant were in her vehicle. When she spoke to the victim, he told Sam to drop off defendant then come to his house. Sam returned to the vehicle and told defendant and Gemia that they should rob the victim. The group discussed the plan: Sam would go inside the victim's house and unlock the door, and then defendant would come inside and hold the victim up by gunpoint.

¶ 13       As they drove to the victim's house, she sent the victim a text message saying that she had dropped defendant off. Sam parked outside the victim's house and went into the basement. She went inside the victim's room and began smoking crack. A man entered the room, took some crack from the victim, and went back to his living area in the basement. Sam went back upstairs to unlock

the door because the man had gone outside and come back inside. She texted Gemia telling her that the door was unlocked. She sent that message so that defendant could come inside and rob the victim. She then went into the bathroom to use heroin. While in the bathroom, she heard footsteps coming down the basement stairs. She heard a commotion and then a gunshot. She came out of the bathroom and saw defendant holding a gun. Defendant then told Sam to take the victim's wallet and drugs. She took the wallet from the victim's pocket and fled.

¶ 14    The State presented video surveillance footage from the Kroger gas station and a house near the scene of the crime. The video showed Sam speaking with the victim in the Kroger parking lot. The video from the nearby house showed the same black SUV parked outside the victim's home. One individual went inside the house. About 15 minutes later, a second individual went inside the house. Then about a minute and a half later, two individuals ran from the house and to the SUV.

¶ 15    Dr. Amanda Youmans performed the autopsy on the victim. She determined the cause of death to be a single gunshot wound to his neck. She removed the bullet from the victim's body. The path of the bullet went through the victim's spinal cord. The victim died within a few seconds to a few minutes. There was a lack of stippling near the entrance wound. Therefore, she opined that the gun had not been fired within two feet of the victim. She also noted that the two shirts he had been wearing had bullet holes. This meant that the bullet passed through both shirts before entering the victim's body. She did not see evidence of gunpowder on the clothing. The only other injury the victim showed was a laceration to the victim's cheek, which she believed occurred around the time of death. She agreed that the laceration could be caused by being hit with a blunt object like the butt of a gun. It was possible that the victim's DNA would have been on the butt of the gun if it had been used to hit the victim on his cheek.

¶ 16 Police recovered the victim's wallet where defendant had been living. Police also obtained the murder weapon. An officer examined the gun for fingerprints but found none. The officer also swabbed the gun for DNA, but there was no testimony regarding the results of any DNA testing.

¶ 17 Police recovered the victim's cellphone. The cellphone showed text messages between the victim and Sam starting at about 11:55 p.m. The first messages discussed meeting at the Kroger gas station so that the victim could buy Sam gas. At around 12:26 a.m., Sam texted the victim saying, "I just dropped the dude off."

¶ 18 Police also reviewed Sam's cellphone activity. Police found multiple messages between Sam and Gemia. At 12:41 a.m., Gemia's phone texted Sam's phone asking if the door was unlocked. Seconds later, Gemia texted Sam asking, "[h]e ready?" At 12:43 a.m., Sam texted Gemia's phone asking if the white guy had gone back inside. At 12:44 a.m., Sam texted Gemia's phone indicating that she had to check the door because of the man. At 12:45 a.m., Gemia's phone messaged Sam, "[d]ude, I'm on my way. Fuck that. Still in. Make sure door unlocked." At 12:46 a.m., Sam texted, "[d]oor unlocked. Come on." The last text message came from Gemia's phone to Sam saying, "[c]ome on, girl."

¶ 19 The defense agreed to stipulate that defendant had a prior felony conviction. The State introduced a copy of defendant's 2013 felony conviction; the trial court instructed the jury that it would take judicial notice of defendant's prior felony conviction. The jury did not receive a copy of the exhibit. The nature of the prior felony was not disclosed to the jury.

¶ 20 Defendant did not testify.

¶ 21 During the jury instruction conference, the parties discussed providing the jury with Illinois Pattern Jury Instructions, Criminal, No. 3.13X (4th ed. 2000), regarding the jury's limited

consideration of defendant's prior felony conviction. However, the defense agreed not to provide the instruction.

¶ 22        The jury found defendant guilty of all three charges.

¶ 23        Defense counsel filed a motion for new trial raising various issues. The motion did not include a claim that the trial court erred in failing to sever the charges. The trial court denied the motion.

¶ 24        At sentencing, the court merged the convictions for armed robbery and felony murder and sentenced defendant 47 years' imprisonment. The court also imposed a 2-year sentence for unlawful possession of a weapon by a felon to run consecutively with defendant's 47-year sentence.

¶ 25        II. ANALYSIS

¶ 26        On appeal, defendant contends that he did not receive a fair trial where the trial court declined to sever the charges. Specifically, defendant contends that the unlawful possession of a weapon by a felon charge should have been tried separately from the felony murder and armed robbery charges. Both parties agree that the issue was properly raised at trial. However, defendant acknowledges that counsel failed to raise the issue again in a posttrial motion. Defendant contends that counsel provided ineffective assistance for counsel's failure to include the issue in a posttrial motion.

¶ 27        Both the United States and Illinois Constitutions guarantee a defendant the right to effective assistance of counsel. See U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8. The purpose of this guarantee is to ensure that the defendant receives a fair trial. *Strickland v. Washington*, 466 U.S. 668, 684-85 (1984). Claims of ineffective assistance of counsel are evaluated under the two-part test set forth in *Strickland*, 466 U.S. at 687. *People v. Harris*, 225 Ill. 2d 1, 20 (2007). Under

*Strickland*, defense counsel provides ineffective assistance only if (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's error prejudiced the defendant. Failure to establish either prong is fatal to the claim. *Strickland*, 466 U.S. at 687.

¶ 28    As to the first-prong, we assess counsel's performance using an objective standard of competence under prevailing professional norms. *People v. Ramsey*, 239 Ill. 2d 342, 433 (2010). To show deficient performance, defendant must overcome the strong presumption that counsel's action or inaction was the result of sound trial strategy. *Id.* at 433. We conclude that defense counsel's representation fell below an objective standard of reasonableness.

¶ 29    Counsel had no sound defense strategy for failing to pursue the severance of the charges. To prove defendant committed the offense of unlawful possession of a weapon by a felon, the State was required to present evidence of defendant's prior felony conviction. Had the charges been severed, defendant's prior felony conviction would not have been admissible at defendant's felony murder and armed robbery trial. We acknowledge that a defense decision not to seek a severance, although it may prove unwise in hindsight, is regarded as a matter of trial strategy. *People v. Turner*, 36 Ill. App. 3d 77, 81 (1976). A major disadvantage of a severance is that it gives the State two bites at the apple. See *People v. Poole*, 2012 IL App (4th) 101017, ¶ 10. That is, an evidentiary deficiency in the first case can perhaps be cured in the second. *Id.* Exposing one's client to only one trial might be a sound strategy for minimizing the risk of conviction in some instances but not in this case. Defendant admitted to shooting the victim when he spoke with police. The only contested issue was whether defendant planned to rob the victim before the shooting. Defendant had no hope of being found not guilty of unlawful possession of a weapon by a felon. There is no strategic reason to adopt an all or nothing approach or to avoid giving the State two opportunities to present its evidence against defendant.

¶ 30　　　　To place counsel's deficiency in context, we note that in *People v. Edwards*, 63 Ill. 2d 134 (1976), the Illinois Supreme Court held that the trial court abused its discretion in refusing to grant the defendant's motion to sever an unlawful use of a weapons charge from an armed robbery charge. *Id.* at 140. Although the State generally has an interest in its pursuit of judicial economy in prosecuting all charges against one defendant in one trial, that interest was not so strong as to justify the denial of a severance in *Edwards*. *Id.* The *Edwards* court based its holding on the fact that the weapons count created a strong probability that defendant would be prejudiced in his defense of the armed robbery count since the weapons count required the State to prove a previous burglary conviction. *Id.* The supreme court reversed defendant's armed robbery conviction. *Id.* Here, the trial court offered no basis for its decision to try all three charges at the same trial. Had counsel preserved this argument by including it in a posttrial motion, we—like the *Edwards* court—would have found that the trial court abused its discretion in failing to sever the charges.

¶ 31　　　　We now turn to the second prong of the *Strickland* standard. To establish prejudice, defendant must show that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v. Pineda*, 373 Ill. App. 3d 113, 117 (2007) (quoting *Strickland*, 466 U.S. at 694). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Pineda*, 373 Ill. App. 3d at 117 (quoting *Strickland*, 466 U.S. at 694). The prejudice component of *Strickland* entails more than an "outcome-determinative test." *People v. Richardson*, 189 Ill. 2d 401, 411 (2000). Rather, defendant must show that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair. *Id.*

¶ 32　　　　We conclude that defendant has met his burden to affirmatively prove prejudice. See *People v. Johnson*, 2013 IL App (2d) 110535, ¶ 57. Defense counsel's failure to further press the

severance of the charges rendered the result of the trial unreliable. Evidence which directly, or by inference, tends to show that the accused has committed another criminal offense is inadmissible where its only value is to create an inference that because an individual has committed other crimes, he is more likely to have committed the one for which he is on trial. *People v. Bracey*, 52 Ill. App. 3d 266, 273 (1977). Where such evidence has been revealed to a jury, even if for lawful reasons, the danger arises that the jury will infer a criminal propensity from those convictions. *People v. Montgomery*, 47 Ill. 2d 510 (1971). The failure to sever the charges in this case created a significant risk that the trier of fact would use evidence of defendant's prior conviction in determining defendant's guilt or innocence on the other charges. See *Edwards*, 63 Ill. 2d at 140. This problem could have been easily avoided by severing the charges.

¶ 33 Counsel also compounded this error by failing to seek a limiting instruction as to the jury's consideration of defendant's prior felony conviction. Counsel failed to request Illinois Pattern Jury Instructions, Criminal, No. 3.13X (4th ed. 2000), regarding the limited use of evidence that defendant had previously been convicted of a felony. As a result, not only did the jury hear this prejudicial evidence, the jury also did not receive an instruction as to the limited use of such evidence. These compounding errors created such a strong probability that defendant would be prejudiced in his defense of the felony murder and armed robbery charges. Given this, we find that counsel's performance prejudiced defendant. Consequently, we hold that counsel provided defendant with ineffective assistance of counsel.

¶ 34 In closing, we note that defendant only requests the reversal of his felony murder and armed robbery convictions. The failure to sever the charges does not require reversal of defendant's unlawful possession of a weapon by a felon conviction. The introduction of defendant's prior felony was required to prove this charge, and the failure to sever the charges had no effect on the

outcome of defendant's conviction for unlawful possession of a weapon by a felon. We only reverse defendant's convictions and sentences for felony murder and armed robbery. We remand the matter for a new trial on those charges. We otherwise affirm defendant's conviction and sentence for unlawful possession of a weapon by a felon. In light of our finding, we need not address the remaining issues raised by defendant in this appeal.

¶ 35                                  III. CONCLUSION

¶ 36        For the foregoing reasons, we affirm in part, reverse in part, and remand the judgment of the circuit court of Peoria County.

¶ 37        Affirmed in part and reversed in part.

¶ 38        Cause remanded.