NOTICE

Decision filed 10/25/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 180042-U

NO. 5-18-0042

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 16-CF-552 |
| | ) | |
| APOLLO D. DAVIS, | ) | Honorable |
| | ) | Ralph R. Bloodworth III, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE WHARTON delivered the judgment of the court.
Justices Cates and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court abused its discretion by denying the defendant's motion to sever the charge of unlawful possession of a firearm by a felon from the other charges, and we reverse the convictions and remand for new trials.

¶ 2    In this direct appeal, the defendant appeals from his three burglary convictions, his conviction for possession of a stolen firearm, and his conviction for unlawful possession of a firearm by a felon, and from his sentence to four consecutive prison terms totaling 28 years. He raises several issues on appeal. He challenges the court's refusal to sever the unlawful possession of a weapon by a felon charge. We reverse and remand.

1

¶ 3                                    BACKGROUND

¶ 4      The State charged the defendant with three burglaries at three different De Soto locations. The burglaries occurred over the span of three months. The burglaries were all in a single indictment. The indictment contained seven charges. The State ultimately dismissed counts 4 (burglary of a fourth location) and 7 (misdemeanor theft of property). Count 1 alleged that the defendant committed burglary at 12928 Highway 51 on August 12, 2016. Count 2 alleged that the defendant committed residential burglary at 268 Landfill Road on September 19, 2016. Count 3 alleged that the defendant committed burglary at 1 Unicorn Hill Road on October 15, 2016. Count 5 alleged that on December 14, 2016, the defendant committed the offense of possession of a stolen firearm. Count 6 alleged that on December 14, 2016, the defendant committed the offense of unlawful possession of a weapon by a felon (unlawful possession).

¶ 5      The defendant filed a motion *in limine* asking the trial court to bar the State from impeaching him with his prior felony convictions if he testified at trial. The trial court granted the motion, stating that "the prejudice will outweigh any probative value substantially."

¶ 6      The defendant also filed a motion to sever the unlawful possession charge from the other charges. The defendant's attorney argued that because the unlawful possession offense required the State to prove that the defendant was a convicted felon, introduction of that evidence would be prejudicial. The court denied the defendant's motion to sever.

¶ 7      The case proceeded to jury trial on the five charges. We will separately detail the testimony about each burglary charge.

2

¶ 8                                          August 12, 2016, Burglary

¶ 9     David Pace testified that he rented the house at 12928 Highway 51 at the time that it was burglarized. On August 22, 2016, he arrived at this property and discovered that several items had been taken, including a television, a window air conditioner unit, binoculars, and fishing poles. Pace testified that he had previously installed "trail cameras" in the house. The cameras captured images when motion is detected. The images are stored on a computer "chip." Pace reviewed the images that had been taken and then downloaded three images to a disc that he provided to the De Soto police. The first image was taken at 10:58 a.m. on August 8, 2016, and shows an African-American man in the living room near the television set. The second image was taken on August 12, 2016, and shows an African-American man in the living room. This image is a close-up of the man's face. The third image was taken at 9:41 a.m. on August 15, 2016, and shows the back of a man in the shed on the same property. Pace testified that he did not recognize the man depicted in the three images.

¶ 10    Carbondale Detective Baltazar Roman testified that he was assigned to investigate the De Soto burglaries. Detective Roman viewed the first two images retrieved by Pace from his trail cameras. Without objection from the defense, Roman testified that he was familiar with the defendant, and he identified him as being depicted in both images. In later testimony it was revealed that Roman did not really know the defendant but became "familiar" with him by reviewing his driver's license photograph and his Facebook page. Although Roman acknowledged that he could not identify the man in the first image, he assumed that the images were taken at the same time and thus that they depicted the same man.

3

¶ 11    Officer Eric Howard of the De Soto police testified that he met with the burglary victim, Pace, on August 22, 2016. After that meeting, Howard went to Midwest Cash pawnshop in Marion and discovered an air conditioner wall unit and binoculars, both of which met the brand and color descriptions provided by Pace. Officer Howard identified "purchase affidavits" from Midwest Cash indicating that the defendant pawned the air conditioner unit on August 12, 2016, and the binoculars on August 16, 2016. During Pace's testimony, he identified the air conditioner unit and the binoculars as items that were taken from his residence.

¶ 12    Daniella Hewitt, the manager at Midwest Cash in August 2016, testified that when an employee purchases an item from a customer, the employee checks the customer's identification, records the customer's name and address, and takes a photograph of the customer. In addition, Hewitt testified that there were over 30 surveillance cameras in and around the store which automatically saved time-stamped videos to a computer. Hewitt testified that the system was functioning properly in August 2016. Upon request, Hewitt provided the police with videos from August 8, 2016, and August 12, 2016.

¶ 13    The State played the August 8, 1016, video for the jury. The video depicted an African-American man entering the store with a television set, followed by a young boy carrying a fishing pole. On the same video, an employee paid this man for the television set. Hewitt testified that she was familiar with the defendant who frequented the store, and she identified him from the August 8, 2016, video. She also identified a "loan ticket" that showed that Midwest Cash paid the defendant for the television set on August 8, 2016.

¶ 14                    September 19, 2016, Residential Burglary

¶ 15    Blake and Leslie Mulholland testified that they lived at 268 Landfill Road. The house was connected to a garage by a breezeway. Inside the house, the Mulhollands had a "safe room" with a locked steel door. They stored more than 20 guns in the safe room. On September 19, 2016, Blake returned home, noticed that the home had been broken into, and called 911. Multiple items were missing including a television set, a Browning .380 handgun, and more than 20 guns from the safe room. Officer Howard responded to the 911 call that same evening.

¶ 16                             October 15, 2016, Burglary

¶ 17    Jeremy Archer testified that his father owned a house at 1 Unicorn Hill Road. No one was living in the home in October 2016. Archer and a friend, Brett Schrey, were taking care of the house. On October 12, 2016, Schrey visited the house and saw nothing amiss. On October 15, 2016, Archer stopped by to check the house and saw that the front door had been broken open. Inside, he noticed that several items had been taken, including a laptop computer. He also noticed that there were baseball cards strewn onto the floor of the closet. Archer called the police, and he walked through the house with them, and then left the house. The front door could not be locked. The next morning, Archer returned to his father's house and noticed a gold Pontiac vehicle in front of the house. He noted that the license plate on the Pontiac started with 290. Archer did not get to see the driver of the Pontiac. Inside the house, Archer noticed that cleaning items had been moved from under the kitchen sink to the dining room table. Archer again contacted the police. A fingerprint was obtained from a can of cleanser on the dining room table. The fingerprint belonged to the defendant.

¶ 18                    Testimony About a Search Warrant and Firearm Charges

¶ 19    On December 14, 2016, three Jackson County sheriff's detectives executed a search warrant for the apartment where the defendant then lived. When executing the search warrant, the detectives noticed a gold Pontiac vehicle with a license plate starting Z90 in front of the apartment building. Inside the apartment, the detectives found a laptop computer, a Kindle, and a Browning .380 handgun. Archer identified the laptop as belonging to his father. The Mulhollands identified the Browning .380 handgun and the Kindle as belonging to them. The detectives also obtained a search warrant for the phone belonging to the defendant's girlfriend. On the phone, the detectives found a video of the defendant holding a handgun. Blake Mulholland identified the gun from the video as his missing Browning .380.

¶ 20                    The Defendant's Statements to Police

¶ 21    Detective Liggett spoke with the defendant after his arrest. The defendant stated that he and his girlfriend shared the gold Pontiac vehicle. He admitted that the Browning .380 handgun was stolen. The defendant identified a photograph of the house at 1 Unicorn Hill Road and informed Detective Liggett that he broke into the house and that he stole baseball cards. Initially, he believed that the Browning .380 handgun came from this same house but later admitted that he could not remember. He also identified a photograph of the house at 268 Landfill Road. The defendant stated that he and a man named Tennessee went to the house. He said that Tennessee broke into that house and returned to the vehicle with numerous "long guns."

¶ 22    The defendant accompanied Detective Liggett on a driving tour of the area during which the defendant acknowledged all three burglary sites. He told Detective Liggett that he burglarized the house at 12928 Highway 51, from which he took a television set and other items. Detective

Liggett drove the defendant by other recently burglarized sites, but the defendant denied involvement in those burglaries. Upon return to the station, the defendant remembered that the Browning .380 handgun was taken from the house at 268 Landfill Road. These statements were not recorded. Detective Liggett did not ask the defendant if he wanted the statements recorded, or if the defendant wanted to write out his statement, or if the defendant wanted to review the investigative reports.

¶ 23                    Trial Stipulation, Closing Arguments, and Verdicts

¶ 24    The parties agreed to stipulate that the defendant had a prior felony conviction. In closing, the State emphasized the defendant's confusion over the burglary sites, stating that "the evidence has shown that the Defendant certainly was involved in a lot." The State reminded the jury that the defendant was a convicted felon. The trail camera images from the 12928 Highway 51 burglary, along with all other photos, were sent back with the jury for use in its deliberation. The jury found the defendant guilty on all five charges.

¶ 25                    Posttrial Motions and Sentencing

¶ 26    The defendant alleged in his posttrial motion that the trial court abused its discretion in denying his motion to sever the unlawful possession charge. The trial court denied his motion.

¶ 27    From the presentence investigation interview, the defendant admitted to a polysubstance abuse problem. He acknowledged that he needed substance-abuse treatment. He lived with his girlfriend and her four children. The defendant was the biological father of one of the children.

¶ 28    Because the defendant had two prior convictions for residential burglary and one conviction for theft, the trial court determined that Class X sentences were mandatory on the three burglary convictions and the stolen firearm conviction. The court found that "the offense was

7

committed as a result of the use of, abuse of, or addiction to alcohol or a controlled substance," and recommended that the defendant receive substance-abuse treatment in prison. The trial court sentenced the defendant to consecutive terms of 10 years for residential burglary, 6 years for each of the two burglary convictions, and six years for possession of a stolen firearm. The court also sentenced the defendant to a concurrent term of six years for the unlawful possession conviction.

¶ 29  The defendant filed a motion to reconsider his sentence. He argued that the sentences were excessive and that the consecutive sentences were improper. On January 31, 2018, the trial court denied the motion. The defendant appeals from the convictions and sentences.

¶ 30                                  ANALYSIS

¶ 31  On appeal, the defendant raises multiple issues. We find one of the issues mandates a reversal of his convictions and remand for separate trials.

¶ 32          Motion to Sever the Charge of Unlawful Possession of a Weapon by a Felon

¶ 33  The defendant first contends that the trial court abused its discretion when it denied his motion seeking to sever the unlawful possession charge from the other charges. Because the unlawful possession charge remained attached to the other four charges, the jury was informed that the defendant was a convicted felon. The defendant filed the motion to avoid the prejudice that would result in acknowledging his felony background.

¶ 34  A trial court has substantial discretion to decide if charges should be severed. *People v. Walston*, 386 Ill. App. 3d 598, 600 (2008). The trial court's ruling on a motion to sever will not be reversed unless that decision constituted an abuse of discretion. *Id.* While a reviewing court typically defers to the trial court's decision, the reviewing court should reverse and remand if the

trial court did not exercise its discretion "to prevent injustice." (Internal quotation marks omitted.) *People v. Utley*, 2019 IL App (1st) 152112, ¶ 40.

¶ 35 Generally, joining multiple offenses in the same indictment is allowable so long as the offenses meet the criteria of section 111-4(a) of the Code of Criminal Procedure of 1963. "Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are based on the same act or on 2 or more acts which are part of the same comprehensive transaction." 725 ILCS 5/111-4(a) (West 2014). However, just because multiple offenses could be joined for trial does not mean that they must be joined for trial if the defendant would be prejudiced by the joinder. *Id.* § 114-8(a).

¶ 36 Illinois courts have consistently found that joining a criminal charge with a charge like the unlawful possession charge in this case severely prejudices the defendant. See *People v. Bracey*, 52 Ill. App. 3d 266, 273 (1977) (citing *People v. Edwards*, 63 Ill. 2d 134, 140 (1976)). "Where such evidence has been revealed to a jury, even if for lawful reasons, the danger arises that the jury will infer a criminal propensity from those convictions." *Id.* (citing *People v. Montgomery*, 47 Ill. 2d 510 (1971)). The prejudice to the defendant is not dependent upon the extent of the review of the previous felony conviction because "it is the initial exposure of the jury to the prejudicial evidence which causes the harm." *Id.* at 274.

¶ 37 In *Bracey*, the State had to plead and prove that the defendant had a prior conviction to establish his guilt on the charge of felonious unlawful use of weapons. *Id.* at 268, 272-73. The defendant was also charged with murder, attempt murder, and aggravated battery. *Id.* at 268. The trial court declined the defendant's requests to sever the felonious unlawful use of weapons charge

from the other charges. *Id.* at 272. On appeal, the court concluded that the trial court committed reversible error by not severing the weapons charge from the other charges, and the resulting prejudice to the defendant mandated reversal of the convictions. *Id.* at 275; see also *Edwards*, 63 Ill. 2d at 140 ("We find that the joinder of the armed robbery and the felonious unlawful use of a weapon charges created such a strong possibility that the defendant would be prejudiced in his defense of the armed robbery charge that it was an abuse of the trial court's discretion to deny a severance."); *People v. Johnson*, 2013 IL App (2d) 110535, ¶ 58 (concluding that the defendant was unduly prejudiced by joinder of a misdemeanor domestic battery charge with an unlawful possession of a weapon by a felon charge).

¶ 38     In this case, the prejudice is clear. The jury was instructed that for unlawful possession, the State needed to prove that the defendant had previously been convicted of a felony. As in *Bracey*, we are concerned that the jury inferred a criminal propensity after the court informed the jury that the defendant was a convicted felon. *Bracey*, 52 Ill. App. 3d at 273 (citing *Montgomery*, 47 Ill. 2d 510); see also Ill. R. Evid. 404(b) (eff. Dec. 1, 2011). Further, the State compounded the prejudice by its emphasis in its opening statement and in closing argument that the defendant was a convicted felon. Evidence of a prior felony would not have been admissible in any other count of the indictment. Evidence of a prior felony would not have been admissible if the defendant decided to testify at trial because of the trial court's *in limine* order. Inherently, the trial court understood the substantial prejudice that stems from admission of past felony convictions in a current trial. That understanding informed the trial court's decision to grant the defendant's motion that barred the State from impeaching him with his prior convictions. We find that introduction of the previous felony conviction resulted in prejudice to the defendant. Accordingly, we conclude that the trial

10

court abused its discretion in denying the defendant's motion to sever the unlawful possession charge.

¶ 39    In *People v. Edwards*, the Illinois Supreme Court noted that a trial court's failure to sever an unlawful use of a weapon by a felon charge from other charges, did not necessarily require a reversal of the unlawful use conviction. *Edwards*, 63 Ill. 2d at 140. We conclude that the prejudice resulting from the trial court's failure to sever the unlawful possession charge in this case resulted in prejudice to the defendant on the three burglary charges and on the unlawful possession charge. In fairness to the defendant, we find that he has a right to a trial on the unlawful possession by a felon charge separate from the three burglary charges. As the appellate court concluded in *People v. Bracey*, we also feel compelled to reverse this weapons charge and remand for a new trial. *Bracey*, 52 Ill. App. 3d at 275.

¶ 40    Because we are concerned that a lay opinion identification evidence issue is likely to reoccur in the trial for the burglary at 12928 Highway 51, we briefly address the defendant's argument that the trial court committed reversible error in admitting lay opinion identification of the defendant.  A lay witness is typically confined to testimony regarding facts of which the witness has firsthand knowledge. *People v. Donegan*, 2012 IL App (1st) 102325, ¶ 41. Rule 701 of the Illinois Rules of Evidence provides guidelines for a lay witness testifying in the form of an opinion or inference as follows:

> "testimony *** is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge ***." Ill. R. Evid. 701 (eff. Jan. 1, 2011).

¶ 41    In *People v. Thompson*, the supreme court noted that because Rule 701 of the Illinois Rules of Evidence is based upon the federal evidentiary rules, consideration of federal cases for guidance

11

is appropriate. 2016 IL 118667, ¶ 40. Lay opinion identification testimony may be allowed "where 'there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury.' " *Id.* ¶ 41 (quoting *United States v. White*, 639 F.3d 331, 336 (7th Cir. 2011)). The *Thompson* court identified five relevant factors to be used in determining if a lay witness is more likely to be able to identify the defendant than the jury. *Id.* ¶ 43. Those totality of the circumstances factors are: the witness's general level of familiarity with the defendant's appearance, the witness's familiarity with the defendant's appearance at the time of the surveillance photo or video, whether the defendant disguised his appearance at the time of the charged offense, whether the defendant altered his appearance at trial, and the degree of clarity of the surveillance recording and the quality of the defendant's depiction. *Id.* ¶¶ 44, 46, 47, 48. The supreme court noted that if one or more of these factors existed, then there was some basis to find that the witness is more likely to identify the defendant than the jury. *Id.* ¶ 49 (quoting *State v. Barnes*, 212 P.3d 1017, 1024 (Idaho Ct. App. 2009)). The extent that the witness has had the ability to observe the defendant goes to the weight of the evidence and not to its admissibility. *Id.* The supreme court held that "opinion identification testimony is admissible under Rule of Evidence 701 if (a) the testimony is rationally based on the perception of the witness and (b) the testimony is helpful to a clear understanding of the witness's testimony or a determination of a fact in issue." *Id.* ¶ 50. However, lay identification testimony may be inadmissible if the " 'probative value is substantially outweighed by the danger of unfair prejudice.' " *Id.* ¶ 54 (quoting Ill. R. Evid. 403 (eff. Jan. 1, 2011)).

¶ 42    In addition to the general principles of lay opinion identification testimony, the supreme court examined under what circumstances a law enforcement officer could provide identification

12

testimony. *Id.* ¶ 55. The court noted that there was no *per se* rule that would bar admission of a law enforcement officer's identification testimony. *Id.* ¶ 56. The defendant is not denied his or her right to confrontation because the decision not to cross-examine the law enforcement officer is a tactical decision made by defense counsel and is not imposed by the court. *Id.* However, the supreme court set forth precautionary procedures to safeguard the defendant's right to cross-examine the officer about his familiarity with the defendant and for the officer to disclose any bias or prejudice without revealing the defendant's past criminal history to the jury. *Id.* ¶¶ 57-59. The court stated that before a trial court determines that law enforcement identification testimony is admissible, the court must follow a procedure. *Id.* ¶ 59. The court held:

> "when the State seeks to introduce lay opinion identification testimony from a law enforcement officer, the circuit court should afford the defendant an opportunity to examine the officer outside the presence of the jury. This will provide the defendant with an opportunity to explore the level of the witness's familiarity as well as any bias or prejudice. Moreover, it will allow the circuit court to render a more informed decision as to whether the probative value of the testimony is substantially outweighed by the danger of unfair prejudice. Although a witness may identify himself as a law enforcement officer, his testimony involving his acquaintance with the defendant should consist only of how long he knew the defendant and how frequently he saw him or her. Moreover, to lessen any concerns regarding invading the province of the jury or usurping its function, the circuit court should properly instruct the jury, before the testimony and in the final charge to the jury, that it need not give any weight at all to such testimony and also that the jury is not to draw any adverse inference from the fact the witness is a law enforcement officer if that fact is disclosed." *Id*.

¶ 43    Here, the State called Carbondale Detective Baltazar Roman to provide lay opinion identification testimony of the defendant from two of the three trail camera images. The images were captured on three separate days in August 2016. Detective Roman identified the defendant as the man depicted in these two images, claiming that he was "familiar with" the defendant. We find that, on the defendant's retrial, if the State intends to utilize the lay opinion testimony of Detective Roman, the court must follow the procedure set forth in *Thompson* outside of the

13

presence of the jury, and if the testimony is deemed more probative than prejudicial after this *in camera* process, the court must also instruct the jury as indicated in the supreme court's opinion. *Id.*

¶ 44                                                    CONCLUSION

¶ 45    As we reverse the defendant's convictions, double jeopardy is at issue. The double jeopardy clause of the United States Constitution prohibits the State from retrying a case unless the State presented sufficient evidence in the first trial to prove the defendant's guilt beyond a reasonable doubt. *Johnson*, 2013 IL App (2d) 110535, ¶ 84 (citing *People v. Macon*, 396 Ill. App. 3d 451, 458 (2009)). Before we can remand for a new trial, the double jeopardy clause mandates this court to rule upon the sufficiency of the evidence. *Id.* (citing *People v. Taylor*, 76 Ill. 2d 289, 309 (1979)). After reviewing the evidence presented by the State in the record "in the light most favorable to the prosecution *** [we] conclude that the evidence sufficiently supports the verdict[s] beyond a reasonable doubt." *Id.* This conclusion does not in any way reflect this court's opinion as to whether the defendant was innocent or guilty, and our conclusion is not binding on retrial. *Id.*

¶ 46    For the foregoing reasons, we reverse the convictions in this case and remand for new trials: one for unlawful possession of a firearm by a felon; one for burglary (12928 Highway 51); one for burglary (1 Unicorn Hill Road); and one for residential burglary (268 Landfill Road) and possession of a stolen firearm.


¶ 47    Reversed and remanded.

14